## SEPTEMBER TERM, 1886. 189

Young *v.* South Tredegar Iron Co. and Fox *v.* South Tredegar Iron Co.

YOUNG *v.* SOUTH TREDEGAR IRON COMPANY,

and

FOX *v.* SOUTH TREDEGAR IRON COMPANY and another.

(*Knoxville.* October 21st, 1886.)

1. CORPORATIONS. *Foreign may become domestic. Compliance with law presumed. Situs.*

A corporation organized under the laws of another State, for mining and manufacturing purposes, may be incorporated and carry on its business in this State by complying with certain conditions prescribed by the Act of 1877, Ch. 31; and where such corporation does, in fact, carry on its business in this State—having its chief office, its officers, directory, books, seal, plant, and property here—it will be presumed, in the absence of proof to the contrary, that it has complied with the requirements of said act, and that it is carrying on its business lawfully in this State; and it will be deemed and held to have its *situs* in this State, and to stand in all particulars as a domestic corporation.

Cited: Acts 1877, Ch. 31; Code, §§ 1992–2003 (M. & V.)

2. SAME. *Same. Legislative intent.*

Although by a fiction of law long recognized a corporation dwells only in the State of its creation, and cannot migrate therefrom, yet it is well settled that corporations of one State may exercise their faculties in another State so far, and on such terms, and to such extent, as may be permitted by the latter. The question is always one of legislative intent, and not of legislative power or legal possibility.

Cases cited and approved: Bank *v.* Earl, 13 Pet., 590; Ohio Life Ins. Co. *v.* Merchants' Ins. Co., 11 Hum., 25; Lane *v.* Bank, 9 Heis., 436; 12 Wallace, 82; 94 U. S., 535; Morawetz on Corp., § 513.

3. SAME. *Attachment of stock. Non-resident owner. Situs of stock.*

The *stock* of such foreign corporation has its *situs* in this State, and may be here attached for the debt of a non-resident owner thereof, although the *certificates* may be in his possession, beyond the limits of this State, at the time of the attachment.

Cases cited and approved: Pub. Co. *v.* Pike, 9 Heis., 698; Cornick *v.* Richards, 3 Lea, 15, 16.

Young *v.* South Tredegar Iron Co. and Fox *v.* South Tredegar Iron Co.

4. SAME. *Same.* *Priority of purchaser under attachment over purchaser from owner.*

The purchaser of the *stock* at the sale under such attachment will acquire a valid title as against a subsequent purchaser of the same stock from the non-resident owner, although the latter purchaser pays for the stock and obtains the stock *certificates* before receiving notice of the attachment.

Case distinguished: Cornick *v.* Richards, 3 Lea, 1.

5. SAME. *Stock certificates.* *Nature and qualities of.*

Stock certificates are merely evidence of the ownership of the shares of stock in a corporation—*indicia* of the holder's interest in the earnings and profits of the company; are not negotiable; and not subject to levy of attachment or execution.

6. SAME. *Misnomer.* *Abatement.* *Waiver.*

A misnomer must be pleaded in abatement or it is waived; and a corporation, like an individual, is concluded by a decree rendered against it by a wrong name, if it failed to plead the matter in abatement.

Cases cited and approved: Maury County *v.* Lewis County, 1 Swan, 239; Railroad Co. *v.* Evans, 6 Heis., 609; Morawetz on Corp., ? 181.

7. CHANCERY PLEADING. *Admissions in.* *Return of officer.*

After a defendant has admitted the levy of an attachment in his pleadings, the fact or sufficiency of such levy cannot be inquired into or disputed by him on the hearing.

Case cited and approved: Lea *v.* Maxwell, 1 Head, 365.

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County. May Term, 1884. W. M. BRADFORD, Ch.

W. L. EAKIN, DEWITT & THOMAS, and LEWIS SHEPARD, for Young.

KEY, RICHMOND & CLARK for Fox.

LURTON, J.   The subject-matter of the litigation in each of these bills is the same.   The question is as to the title to thirty shares of stock in the Powell Iron and Nail Company, otherwise known as the South Tredegar Iron Company.   Young claims title by virtue of an attachment proceeding in the Chancery Court of Hamilton County against W. H. Powell, the original owner of said shares, and under which proceeding these shares were sold and bought by him.   Fox claims the same shares by virtue of a private sale and assignment of the certificates by Powell to himself.   The determination of the true title involves the settlement of several distinct questions.   The attachment under which Young claims was issued under an original attachment bill filed in the Circuit Court of Hamilton County against W. H. Powell and the Powell Iron and Nail Company.

Powell was charged to be a non-resident debtor to the complainant in attachment bill, and to own thirty shares of stock in the Powell Iron and Nail Company, a Missouri corporation conducting its business and having its chief office in Hamilton County, Tenn.   The stock was levied on, and notice given to the officer having charge of books of the corporation, June 1st, 1882.   By decree of the Chancery Court, based on publication, and *pro confesso* as to Powell, and answer of the corporation, the stock was decreed to be sold, and the corporation ordered to make transfer on its books of the said stock to the purchaser.   It was ac-

192 . KNOXVILLE:

Young v. South Tredegar Iron Co. and Fox v. South Tredegar Iron Co.

cordingly sold December 30th, 1882, Young becoming purchaser. The corporation refused to recognize Young's purchase or to transfer stock to him, for reasons which will appear hereafter. Young's bill is to compel transfer.

Fox claims to have purchased the same stock from Powell for a full consideration before the filing of said bill. The proof, however, shows that, while there was a negotiation for the sale and purchase of this stock before May 3d, 1882, the effect of which it is not necessary here to determine, yet the stock certificates were not transferred in writing or actually delivered until June 2d or 3d, 1882, on which day the purchaser paid for same by giving his notes, payable in forty-five, seventy-five, and one hundred and five days from that date. We think the fact that the purchase-price was not paid on the stock certificates in the hands of Powell, assigned and delivered to Fox, until June 2d or 3d, left the legal title to these shares in Powell, the owner, until such delivery and actual assignment, and that they were subject to attachment at the time they were levied on— June 1st, 1882. At the time of this sale to Fox both himself and Powell were non-residents of this State, and neither had any actual notice of the pendency of the attachment bill under which Young claims title. The stock certificates in the hands of Powell were the mere evidence of the ownership of shares in a corporation. It is well settled that such certificates are not negotiable.

SEPTEMBER TERM, 1886. 193

Young *v.* South Tredegar Iron Co. and Fox *v.* South Tredegar Iron Co.

The assignee takes them subject to all the equities which existed against the assignor. They are choses in action. *Cornick* v. *Richards*, 3 Lea, 1.

The Court in this case of *Cornick* v. *Richards*, it being a contest between attaching creditors and assignees of stock certificates, said:

"We do not hold * * these certificates negotiable, or that any of the incidents of such character goes with them by assignment, so that the assignee must take subject to previous equities as any other assignee standing in the shoes of his assignor. We only hold that the title passes, and is completely transferred, whether in case of collaterals or an absolute sale, so that a creditor who has fixed no lien on it before cannot appropriate it to his debt and override the title of the purchaser, who has in good faith obtained a regular assignment of the certificate of stock under a valid contract between himself and the owner."

While the case of *Cornick* v. *Richards* does hold that an assignment or delivery of a certificate of stock passes the title without transfer on the books of the Company or notice to the company as against a subsequent attachment, yet we do not think that anything less than an actual transfer and delivery of the stock certificate will defeat an attachment levied before notice to the corporation; and we understand that case to so hold. The attachment bill under which Young's title arises specifically describes this very stock, and it was filed May 30th, at least two days before any valid trans-

194 KNOXVILLE:

Young v. South Tredegar Iron Co. and Fox v. South Tredegar Iron Co.

fer of the title or delivery of the certificate to Fox. Any transfer of property thus specifically mentioned in an attachment bill is void as to the complainant in such bill. Code, § 3507. By Sections 1487 and 3097 stocks in all corporations are declared to be personal property, and subject to execution. *Memphis Appeal Publishing Company* v. *Pike*, 9 Heis., 698.

Undoubtedly all stocks subject to execution would be subject to attachment in equity. 3 Lea, 15, 16. And indeed, without regard to the legislation making such stocks liable to execution, they could be reached by attachment in equity. Code, § 3500. It follows, therefore, all other questions out of the way, that the transfer of the certificates to Fox on the 3d June, 1882, was void as against the attachment bill and levy of June 1st, 1882. Powell had not delivered the stock or transferred it at the time it was attached; and not having parted with the title, it was subject to attachment, and the transfer, after filing of attachment bill and after levy of attachment, gave to Fox no title which he can assert as against a purchaser under the attachment proceedings.

The bill of Fox presents another objection to the validity of the attachment proceeding, which remains to be considered. He charges that the sale to Young was void, "because said stock was not susceptible of being attached in this State, even if it had been Powell's stock, for the reason that the said corporation was a foreign corporation,

having its principal office in the State of Missouri, and the said certificate of stock was held by the said Powell in his personal custody in his residence in the State of Illinois." We readily concede that under the Codes of all civilized nations jurisdiction ends where neither the person or property of the defendant is within the territorial jurisdiction of the Court. It is conceded that Powell was not personally served with the process of the Court, and that jurisdiction to make any decree affecting him or his property depended upon a valid attachment of property owned by him and within the State. If the presence within the State of the stock certificates was essential in determining the *situs* of the stock, then it is admitted that the certificates were, both in contemplation of law as well as in fact, with the person of. Powell, who was a non-resident. But these stock certificates were the mere evidences of the ownership of shares —*indicia* of his interest in the earnings and profits of the company. Their seizure by an execution. or by an attachment would not be a seizure or levy upon the stock itself without more. Notice to the corporation or to the officer having charge of the books of the company. is essential in case of execution. Code, § 3035. If seized by an attachment in equity, the corporation would necessarily have to be notified and properly made a party to the attachment bill. Hence, the locality of the paper certificates or their actual seizure is unimportant. If the corporation were a domestic one, it is clear

that the absence of the certificates from the State would cut no figure.

What, then, is the *situs* of the corporation itself, for that will determine the *situs* of the stock. The original charter under which it organized, it is admitted, was granted by the State of Missouri in 1881. The evident purpose of the incorporators was to carry on business in the State of Tennessee, for the charter provides that there shall be two offices, one called the home office in St. Louis, and the other in Chattanooga, Tenn. By a fiction of law long recognized, and which it is unnecessary to question in this case, a corporation dwells only in the State of its creation, and cannot migrate therefrom. *Bank of Augusta* v. *Earl*, 13 Pet., 590; *Ohio Life Insurance Company* v. *Merchants' Insurance Company*, 11 Hum., 25; *Lane* v. *Bank*, 9 Heis., 436.

In a very able opinion by the Supreme Court of New York, to which we have been referred by counsel, and to which much weight seems attached, it was held that the *situs* of the stock of a nonresident corporation was determined by the fiction as to the residence of the corporation, and that, although the corporation was carrying on business in New York, and its officers and property were within that State, yet it was in theory of law a foreign corporation, and its stock not subject to the attachment laws of that State. *Plimpton* v. *Bigelow*, 93 N. Y., 592. But this very case concedes that "if the corporation, by having its offi-

cers and by transacting business in a State other than its domicile of origin, is deemed to be itself present as an entity in such foreign State to the same extent and in the same sense as it is present in the State which created it, it may be conceded that its shares might be properly attached in such foreign jurisdiction."

It is, in the view we take of this case, unnecessary to determine whether the fiction as to the *situs* of the corporation entity ought not to yield in the interest of justice to the actual facts shown in this case as to the business and property of this corporation.

The Supreme Court of the United States, in the case of *Railroad* v. *Harris*, say:

"Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *quo ad hoc* any property within its jurisdiction. That this may be done was distinctly held in the *Ohio & Mississippi Railroad Company* v. *Wheeler*, 1 Black., 297."

The Court, in the same case, further say:

"It is well settled that corporations of one State may exercise their faculties in another so far and on such terms and to such extent as may be permitted by the latter. The question is always one of legislative intent, and not of legislative power or legal possibility." 12 Wallace, 82; Morawetz on Corporations, Section 513; 94 U. S., 535.

Has the Legislature of Tennessee determined upon what terms and to what extent a foreign corporation may exercise its powers in Tennessee? What is the status of the defendant corporation under the policy and legislation of this State? The Act of 1877, Chapter 31, carried into Code of Milliken & Vertrees as Sections 1992 to 2003, inclusive, provides in substance that every corporation created by the laws of any other State for the purpose of engaging in the business of manufacturing metal, timber, cotton, or wool, or mining ore or coal, desiring to carry on business in this State, must first file with the Secretary of State a copy of its charter, and cause an abstract of same to be registered in the county in which it proposes to engage in business. By a subsequent section it is expressly declared that "such corporations shall be deemed and taken to be corporations of this State, and shall be subject to the jurisdiction of the courts of this State, and may sue and be sued therein in the mode and manner that is or may be by law directed in the case of corporations created or organized under the laws of this State."

We do not think that a foreign corporation of the character defined in this act, they being mining and manufacturing corporations, are authorized to carry on business in this State, except upon compliance with this act and upon the terms of this act. It is not in our judgment optional with such corporations as to whether they will or will not become domestic corporations as required by

this act. Several reasons of public policy, in view of the rapid increase in the number of corporations, and the vast amount of wealth engaged in corporate business, demanded legislative regulation as to the terms upon which corporations of other States should be suffered to carry on business within this State. The legislation by which corporations of other States are made corporations of this State is clearly within the legislative power. The record in this case does not show whether the defendant corporation has complied with the law of registering its charter and filing copy with the Secretary of State; nor do we decide that such acts are *necessary* to its becoming, to all intents and purposes, a domestic corporation. We do find that this company is carrying on the business of making iron within this State; that its officers are here. By its by-laws Chattanooga is declared to be the general office of the company, and that all of its books, including its stock-book, are required to be kept at Chattanooga. The election of Directors takes place there, and its directory meet there. There is its seal, and there is its plant—there its corporate property of every kind. Its whole tangible and ponderable substance is in Tennessee. It is true that its stock-book is not now here, but the proof shows that after Young acquired this stock, and after this controversy had arisen between himself and Fox as to the ownership thereof, that Fox, being the President of the Company, and without authority of his directory, and in defiance of

the by-laws, has carried it out of the State. His
purpose manifestly was to obtain some supposed
legal advantage in his anticipated litigation over
his claim to the stock now in dispute.

In view of all these facts concerning the actual
status of the business and property of this com-
pany, and in view of the character of the corpo-
rate acts that they have been exercising in Ten-
nessee, we can but presume, in the absence of proof
to the contrary, that this corporation has filed its
charter with the Secretary of State, and that it is
lawfully, and not unlawfully, exercising its facul-
ties within this State under the very terms of the
the legislative permission by which it is here
adopted; and while a foreign corporation in one
sense, yet by legislative power it is likewise a do-
mestic corporation. The fiction that the corporate
entity is in Missouri is overthrown by the fact
that it is likewise a domestic corporation, and stands
in all particulars as other domestic corporations.
The *situs* of the stock of this corporation is, there-
fore, Tennessee, and it was subject to attachment
as stock of corporations originally created by this
State.

It is urged in argument that the return of the
Sheriff upon the attachment is not good; that it
does not show an actual levy. The return is per-
haps irregular, but it is doubtful whether or not,
in view of the fact that no actual seizure of the
stock was possible, a return of "executed by read-
ing this writ to the highest officer," etc., is not

in itself sufficient. But however this may be, it is too late to make this question now. Powell, in his petition to set aside the decree *pro confesso*, distinctly says the attachment was levied. He repeats this in his answer. Fox in his bill makes no such objection, but, on the contrary, recites as a fact that the attachment was levied. In the case of *Lea* v. *Maxwell*, 1 Head, 365, this Court held that where a subsequent attaching creditor admits in his bill that an attachment had been issued and levied that it was too late, upon the trial of the cause, to question the fact of a sufficient levy. No question being made in any pleading, but the fact of levy admitted, we think the fact of a levy cannot now be inquired into or disputed.

One other question remains. The Powell Iron and Nail Company, by resolution of its Board of Directors, shortly before the attachment bill was filed, changed the name of the corporation to that of South Tredegar Iron Company. The attachment bill made the corporation a defendant by its original name. Instead of pleading in abatement this misnomer, it answered over its corporate seal as sued, and admitted that Powell was the owner of the stock described in the bill, and decree was taken against it by its original name. The identity of a corporation is no more affected by a change of name than the identity of an individual. The use of a wrong name is not material if the corporation was really intended by the parties. A misnomer of a

corporation has the same legal effect as a misnomer of an individual. Morawetz on Corporations, Section 181. A misnomer must be plead in abatement or it is waived. *Maury County* v. *Lewis County*, 1 Swan, 239; *East Tennessee & Virginia Railroad Company* v. *Evans*, 6 Heis., 609.

The misnomer not having been plead cannot now be taken advantage of. The corporation is bound by the decree to which it was a party, and in which it was decreed that it should transfer the stock of Powell to the purchaser. It follows from these facts and propositions of law that Young's title to the Powell stock is good. The decree of the Chancellor is reversed and report of Commission set aside. There will be drawn a decree here in accordance with this opinion. The bill of Fox will be dismissed at his cost. The South Tredegar Iron Company will pay all the costs of the suit of Young. The dividends declared upon the Powell stock since June 1st, 1882, follow the stock, and belong to Young. He is entitled to recover same from the company, with interest from date of declaration of such dividend. The cause may be remanded for an account of such dividends if desired.