## APPEAL OF WHITE HOUSE MILK CO.

Docket No. 2342.   Submitted May 6, 1925.   Decided October 16, 1925.

1. Where a business had operated at a loss for a number of years, *held*, that it had no good will which could be capitalized by a successor corporation.

2. A taxpayer corporation may not deduct the losses of a predecessor corporation.

*C. F. Sammond, C. P. A.*, for the taxpayer.
*John D. Foley, Esq.*, for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This appeal is from the determination of a deficiency in income and profits tax for the fiscal years ended April 30, 1922, and April 30, 1923, in the amounts of $6,470.11 and $6,864.16, respectively. The deficiency arose from the refusal of the Commissioner to include a certain item of $50,000 alleged good will in invested capital and as an item of cost of assets in computing the profits of a sale, and also from the disallowance, as a deduction from the net profit of the taxpayer, of the net loss of a predecessor corporation for the preceding year.

FINDINGS OF FACT.

1. The taxpayer is a Wisconsin corporation with its principal place of business at West Bend.

2. The White House Milk Products Co., the predecessor corporation, was organized under the laws of Wisconsin on June 15, 1917, and engaged in the business of condensing and canning milk. That company operated until April 30, 1921, at a loss. In order to obtain a supply of milk, it had to develop " milk routes." This was done by employing field agents, who solicited and made arrangements for a steady supply of milk from the farmers and established regular routes for the daily collection of the milk. It also purchased and salvaged the Wallau Dairy Co. plant to reduce the demand for raw milk from farmers and thereby increase the supply for the company. The said predecessor corporation carried on its books an account called " milk routes and good will," which was as follows:

| | | |
|---|---|---:|
| 1918—Purchase of Wallau Dairy Co. and Myria Cheese Co. plant | | $12, 875. 88 |
| 1918—Less salvage, Wallau Dairy Co. plant | | 2, 859. 45 |
| | | 10, 016. 43 |
| 1919—Less salvage, Wallau Dairy Co. plant | | 108. 00 |
| | | 9, 908. 43 |
| 1919—Excess price of 30¢ per cwt. on all milk purchased from Jan. 1, 1918, to Aug. 1, 1919, totaling 17,131,912 lbs., @ 30¢ per cwt., including all extra expense, auto service, etc., in developing the various milk routes | | 51, 395. 73 |
| | | 61, 304. 16 |
| Less 10 per cent charged off | | 6, 130. 41 |
| Dec. 31, 1919, balance | | 55, 173. 75 |
| 1920—Salvage, Wallau Dairy Co. plant | | 4, 600. 00 |
| Balance to date | | 50, 573. 75 |

It is this item, $50,573.75, which the taxpayer is claiming as good will in the subsequent transactions hereinafter described.

3. On April 23, 1921, the White House Milk Products Co. dissolved by action of its stockholders and sold its entire assets to an individual, H. M. Langer, for a nominal sum ($200), who also assumed all liabilities. A new company, the White House Milk Co., the taxpayer herein, was formed on or about April 29, 1921. Eleven stockholders out of 45, representing 1,045 shares out of 2,099 shares, entered the new company, subscribing and paying cash for 460 out of 985 shares in the new company. The only new stockholder subscribed for 25 shares. The remaining 500 shares were issued to H. M. Langer for the assets of the old company. The new company assumed the liabilities of the old from the said H. M. Langer. The 500 shares issued to Langer were then transferred by him, without consideration, to the other stockholders of the new company in proportion to their holdings or stock subscriptions.

4. The taxpayer immediately commenced operations on May 1, 1921, and continued to October 31, 1922, at a profit. On this latter date it sold its fixed assets to the A. & P. Products Corporation of New York for the sum of $275,000 and voted to dissolve. The A. & P. Products Corporation took over and operated the plant of the taxpayer without interruption, and with it took over all employees, inventories, goods in process, and the milk-collection organization. The book value of the tangible assets included in this sale to the A. & P. Products Corporation was $178,768.82 and the intangible assets $50,573.75, causing a gross profit of $96,231.18 if the intangibles be excluded, and $45,657.43 if the intangibles be included.

5. During the period from January 1, 1921, to April 30, 1921, the White House Milk Products Co. (the predecessor corporation) had a net loss of $29,076.10. The taxable income of the taxpayer for the fiscal year ended April 30, 1922, was $26,603, and for the fiscal year ended April 30, 1923, $16,456.50. The taxpayer seeks to have the net loss of the predecessor company, to wit, $29,076.10, deducted from the net profit of the taxpayer herein for the succeeding taxable years. The Commissioner excluded the $50,573.75 claimed as invested capital, disallowed as a deduction the loss of the predecessor corporation from January 1 to April 30, 1921, and determined a deficiency of $6,470.11 for the fiscal year ended April 30, 1922. For the fiscal year ended April 30, 1923, the Commissioner disallowed $50,423.75 (claimed for cost of milk routes) as part of the cost of the business in computing the profit on the sale of the assets of the taxpayer to the A. & P. Products Corporation, and disallowed, as a deduction, the balance of the net loss of the predecessor corporation for the period of January 1 to April 30, 1921.

#### DECISION.

The determination of the Commissioner is approved.

#### OPINION.

GRAUPNER: In this appeal there is presented the question of fact whether or not the milk routes under consideration had a good-will value of approximately $50,000 for invested capital purposes and for the purpose of computing profits' resulting from the sale of the assets of the taxpayer to the A. & P. Products Corporation. There is also the question of law, involving the right to deduct net losses of a predecessor corporation for a fractional taxable year from the net profit of the taxpayer for the succeeding taxable years.

The Board has recognized that good will can have value for invested capital purposes only when established by adequate proof of actual cash value. *Appeal of John H. Wood Co.*, 1 B. T. A. 1098; *Appeal of Richmond Dairy Lunch*, 1 B. T. A. 876. The mere setting up of value of good will upon the books is not sufficient. The fact that a business has operated at a loss for a number of years is strong evidence against an alleged value of good will. *Appeal of York Hotel Corporation*, 1 T. B. A. 672; *Appeal of Walcutt Brothers Co.*, 1 B. T. A. 910. In this appeal, the predecessor corporation operated at a loss for nearly four years and sold its assets to H. M. Langer for $200, who assumed the liabilities. The new corporation issued to him 500 shares ($100 par value each) for all assets, and subsequently, without consideration, he distributed this stock to the stockholders of the new company. While the

$50,573.75 item was set up on the books in a "milk route and good-will" account, there is no convincing evidence that it had the actual cash value ascribed to it. On the contrary, it appears that in the sale of the assets of the White House Milk Products Co. to Langer and the sale by Langer to the taxpayer the parties did not attribute any cash value to this item. There is in this case an entire lack of convincing evidence that this milk route account, at the time it was transferred to the taxpayer, had any actual cash value. As this good will had no actual cash value, the action of the Commissioner was also correct in refusing to allow this item as a part of the cost of the assets in computing the profits resulting from the sale of the assets of the taxpayer to the A. & P. Products Corporation.

The taxpayer contends it should be allowed to deduct the net loss of the White House Milk Products Co., incurred during the period January 1, 1921, to April 30, 1921, from the net income of the taxpayer for the succeeding taxable years ended April 30, 1922, and April 30, 1923, under the provisions of section 204 (b) of the Revenue Act of 1921, as interpreted in *Appeal of Carroll Chain Co.*, 1 B. T. A. 38. See *Appeal of Tacoma Grocery Co.*, 1 B. T. A. 1062. The White House Milk Products Co. kept its books on the calendar-year basis and operated in 1921, from January 1 to April 23, at a net loss of $29,076.10. It sold its assets to H. M. Langer, who sold the same to the taxpayer shortly after. The taxpayer kept its books on a fiscal-year basis, ending April 30, and for the year ended April 30, 1922, had a taxable income of $26,603, and for the year ended April 30, 1923, had a taxable income of $16,456.50. Eleven stockholders out 45, representing 1,045 out of 2,099 shares, entered the new company (taxpayer), taking 460 out of 985 shares. In our opinion there are too many legal obstacles to overcome to sustain the contention of the taxpayer. There is a difference in taxable years—one calendar and one fiscal—and there is the difference in legal entities. It is undisputed that the taxpayer was a new corporation composed of a minority of stock and stockholders of the old corporation and that there was an intervening ownership of assets by an individual prior to the formation of the new corporation.

The taxpayer further contends that, in case its foregoing claims are not sustained, it is entitled to special relief under sections 327 and 328 of the Revenue Act of 1921. Very little testimony was presented to sustain this position. The taxpayer points out that the invested capital allowed by the Commissioner was $72,517.70 and that the taxable income for the year ended April 30, 1922, was $26,603, indicating an abnormality in invested capital allowed. This fact in itself is an entirely insufficient basis upon which to grant special

relief under sections 327 and 328 of the Revenue Act of 1921.   In view of the foregoing opinion, we must sustain the position of the Commissioner in all particulars in this appeal.

ARUNDELL not participating.