FARMERS COTTON OIL COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 42679. Promulgated November 23, 1932.

*Percy W. Phillips, Esq.*, for the petitioner.
*John E. Marshall, Esq.*, for the respondent.

110

. OPINION.

LOVE: Regarding the first issue, we have consistently held that the net loss of a predecessor corporation was *not* deductible, under the "net loss" provisions of the statute, by the successor corporation, on the ground that the two corporations were separate and distinct "taxpayers" whose separate entities could not be disregarded. See *Maytag Co.*, 17 B. T. A. 182; *Plumber's Supply Co.*, 20 B. T. A.

459; *Standard Silica Co.*, 22 B. T. A. 97; *Athol Mfg. Co.*, 22 B. T. A. 105; affd., 54 Fed. (2d) 230; *Industrial Cotton Mills Co.*, 22 B. T. A. 648; affd., 61 Fed. (2d) 291; *Clark Dredging Co.*, 23 B. T. A. 503 (on appeal to C. C. A., 5th Cir.); *Overbrook Nat. Bank of Philadelphia*, 23 B. T. A. 1390; and *New Colonial Ice Co.*, 24 B. T. A. 886 (on appeal to C. C. A., 2d Cir.). In the *Athol* case, *supra*, the Circuit Court of Appeals said:

We fail to see how we can add anything to what was stated by the Board of Tax Appeals in its opinion. We are in full accord with its ruling and finding that the petitioner was an independent entity from the old corporation whose assets and business it took over; that the losses sustained by the old company in conducting its business during 1922 and a part of 1923 were not the petitioner's losses; and that it was not entitled to deduct the same in its tax return.

Petitioner, however, attempts to distinguish the instant proceeding from the above cases, on the ground that in each of those cases the change from predecessor to successor corporation occurred prior to the enactment of the Revenue Act of 1924; that in the case of changes which took place prior to the 1924 Act, the successor company took a new basis for subsequent determination of gain or loss and depreciation; that petitioner was a reorganization of the Farmers Oil & Fertilizer Company within the provisions of section 203 (h) (1) (A), (B) and (D) of the Revenue Act of 1924; that under the 1924 and later revenue acts the reorganized company takes the *same* basis for subsequent determination of gain or loss and depreciation as was available to its predecessor; and that petitioner should, therefore, be permitted to take the place of the old corporation for the purpose of obtaining the benefit of the net loss deduction provided for in section 206 (b) of the Revenue Act of 1926, which reads in part as follows:

If, for any taxable year, it appears * * * that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year * * *.

The fact which petitioner contends distinguishes the instant proceeding from the above cited cases, namely, whether the reorganization occurred prior or subsequent to the enactment of the Revenue Act of 1924, was present in the recent case of *Elliott-Granite Linen Corp.*, 26 B. T. A. 936, promulgated August 31, 1932. In the last mentioned case there was a reorganization, which took place under the Revenue Act of 1926. Nevertheless, we continued to hold that the new corporation was not the same taxpayer as the old corporation and, hence, not entitled to deduct from its net income the net loss of the old.

In the instant proceeding, as will appear in our discussion of the second issue, we are of the opinion that there was, in 1924, no "reorganization" as that term is all-inclusively defined in section 203 (h) (1) of the Revenue Act of 1924. But in view of our holding in *Elliott-Granite Linen Corp.*, *supra*, we do not regard it necessary to decide this point in connection with the first issue, for the reason that even if there were a reorganization, as petitioner contends, that conclusion would not entitle petitioner to the benefit of the net loss of the predecessor taxpayer, namely, the Farmers Oil & Fertilizer Company. The respondent's determination on this issue is approved.

The second issue is whether petitioner is entitled to a basis greater than $100,000 for determining depreciation and gain or loss from the sale or other disposition of the property acquired at the time of its organization.

The salient facts are that on July 7, 1924, 19 of the old stockholders, owning 66.2 per cent of the capital stock of the old company, agreed to form a new corporation, to subscribe and pay for stock therein in the total amount of $100,000, and to "appoint W. T. Murphy as Trustee to act for them and to purchase for them" all the properties of the old company; that on July 12, 1924, Murphy, as trustee, purchased the assets of the old company at public auction for $100,000 in cash; that on July 19, 1924, petitioner was incorporated; that on August 1, 1924, petitioner, as the primary obligor, executed new notes for the remaining indebtedness of the old company in the amount of $139,522.33; and that on August 4, 1924, Murphy, as trustee, directed the liquidating agent of the old company to convey the property of the old company directly to petitioner "instead of to the said W. T. Murphy, said property having been put into said corporation by us, and for which we have received stock of said corporation * * *."

Section 204 (a) of the Revenue Act of 1926, provides that the "basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property" subject, however, to 11 exceptions, none of which apply here unless it be (7) thereof. Whether exception (7) applies depends upon whether petitioner acquired the properties "in connection with a reorganization * * *." The properties were acquired in 1924 while the Revenue Act of 1924 was in effect. Section 203 (h) (1) of that Act provides:

The term "reorganization" means (A) a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or substantially all the properties of another corporation), or (B) a transfer by a corporation of all or a part of its assets

to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (C) a recapitalization, or (D) a mere change in identity, form, or place of organization, however effected.

Petitioner contends that it comes within the provisions of (A), (B) and (D) of the above definition. In so contending, it entirely disregards the sale which took place on July 12, 1924. Petitioner did not acquire the properties of another corporation; it acquired the properties of 19 individuals for whom Murphy was acting as trustee. The properties that were transferred to petitioner were the properties of the 19 individuals, and not the properties of the old corporation. Both in substance and in form, the transaction was a sale by the old corporation of its properties to 19 individuals, and a transfer by them of such properties to petitioner in exchange for the latter's stock and the assumption by petitioner of certain indebtedness for which the individuals were themselves liable. What thus occurred was more than " a mere change in identity, form, or place of organization  *  *  *." See *Pinellas Ice & Cold Storage Co.*, 21 B. T. A. 425; affd. 57 Fed (2d) 188; and *Cortland Specialty Co.*, 22 B. T. A. 808; affd. 60 Fed. (2d) 937.

Section 204 (c) of the Revenue Act of 1926 provides that the basis upon which depreciation is to be allowed " in respect of any property shall be the same as is provided in subdivision (a)  *  *  * for the purpose of determining the gain or loss  *  *  *." Since we have found that none of the exceptions under subdivision (a) were applicable, the basis to petitioner for determining depreciation and gain or loss from the sale or other disposition of the properties acquired at the time of its organization is the cost of such properties to petitioner. Cf. *Olean Sand & Gravel Corp.*, 24 B. T. A. 324.

What, therefore, was the cost to petitioner of the properties it acquired at the time of its organization? This depends upon what it gave in return for such properties. One thing is certain, it assumed an indebtedness of $139,522.33, which was later reduced to $124,522.33 by reason of recoveries in suits against certain of the old stockholders of at least $15,000. What did petitioner give in addition to the indebtedness assumed? Did it give its capital stock, or did it give $100,000 in cash? If it were the former, we must determine the value, if any, of the stock; if it were the latter, the cost of the properties to petitioner would clearly be $224,522.33.

The opening journal entry on petitioner's books records the transactions as if the 19 individuals paid in to petitioner $100,000 in exchange for all of petitioner's capital stock, and that petitioner later paid out the $100,000 in part payment for the properties. But this is not in accord with what actually happened. What actually

took place was that on July 12, 1924, which was a week before petitioner was incorporated, the 19 individuals purchased the properties at public auction for $100,000; that the $100,000 was never paid in to petitioner for its stock, but was deposited in a bank to the credit of Bradshaw, the liquidating agent for the old company; and that Bradshaw, on August 4, 1924, acting under direction of Murphy as trustee for the 19 individuals, Murphy having stated "said property having been put into said corporation [meaning petitioner] by us, and for which we received stock of said corporation," conveyed the properties direct to petitioner. We, therefore, find that in payment for the properties petitioner gave its capital stock in addition to the indebtedness assumed.

What, then, was the fair market value of petitioner's capital stock? Since the assets received by petitioner were worth considerably less than the amount of the indebtedness assumed by petitioner, we can not find that the stock had any value. Finding, as we do, that the stock of petitioner had no value, it follows that the cost to petitioner of the properties it acquired at the time of its organization was limited to the amount of the indebtedness which it assumed.

The respondent argues that, because of the notation in petitioner's journal that the liabilities of the old company were assumed " only upon subrogation to F. C. O. Co. of contracts and rights of recovery against stockholders," the indebtedness could not be considered as a part of the consideration paid for the properties. Notwithstanding this notation, petitioner actually issued its promissory notes in the amount of $139,522.33 and thereby became primarily liable to that extent, and, so far as the record shows, petitioner was not reimbursed in any amount greater than the amount recovered in the suits against certain of the old stockholders.

The deficiencies should be computed upon a basis of $124,522.33 for determining depreciation and gain or loss from the sale or other disposition of the properties acquired by petitioner at the time of its organization. This basis should be allocated among the separate assets in accordance with the same method used by the respondent in allocating the basis of $100,000 in his deficiency notice. In this connection, see *Seymour Mfg. Co.* v. *Burnet*, 56 Fed. (2d) 494.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

BLACK, concurring in the result: I dissent from the majority opinion wherein it holds that petitioner was not a reorganization of the Farmers Oil and Fertilizer Company, but I concur in the

result reached for other reasons, which I will later state herein. It seems to me that the facts of this case show a reorganization within the meaning of section 203 (h) (1) of the Revenue Act of 1926.

I do not think the view above expressed is in conflict with *Pinellas Ice & Cold Storage Co., supra,* or *Cortland Specialty Co., supra.* Those cases are now pending in the Supreme Court, writ of certiorari having been granted, and, assuming that the Board and the Circuit Courts will be affirmed in both cases, I do not think it will follow that there was no reorganization in the instant case. The facts of the instant case are entirely different from the facts of the above cited cases. In the *Pinellas Ice & Cold Storage Co.* case there was an outright sale of assets by one corporation to another and it was not argued by the taxpayer that there would be a reorganization except for the parenthetical clause contained in (A) of section 203 (h) (1).

The Board, and the Circuit Court, in affirming the Board, held that the parenthetical clause had no reference to such a state of facts as was present in that case. To the same effect is *Cortland Specialty Co., supra.* In the latter case the court points out the general meaning of the word "reorganization." Says the court, "Reorganization in the most ordinary sense suggests the formation of a new corporation that is in financial difficulties for the purpose of purchasing the company's works and other property, after the foreclosure of a mortgage or judicial sale. Morowietz Corp., 812; *Symmes* v. *Union Trust Co.,* 60 Fed. 870." The court, in the concluding part of its opinion, said, "In defining 'reorganization,' section 203 of the Revenue Act gives the widest room for all kinds of changes in corporate structure but does not abandon the primary requisite that there must be some continuity of interest on the part of the transferor corporation or its *stockholders* to secure exemption. Reorganization presupposes *continuity of business under modified corporate form.*" (Italics supplied.)

In the instant case the transferor corporation did not continue. It was dissolved and faded out of the picture, but its stockholders carried on through the entity of a new corporation to take the place of the old. Nineteen of its stockholders, owning 66 per cent of the stock of the old corporation, because the *only* stockholders of the new corporation. And the same business with the same assets and liabilities, except the addition of $100,000 new capital, was carried on under the name of the new corporation, with no one as a stockholder except those who were stockholders of the old corporation.

I agree that (A) of section 203 (h) (1), which has reference to mergers and consolidations, as interpreted by the Board and the courts, does not apply. It was this clause which was involved in the

*Pinellas Ice & Cold Storage Co.* case and the *Cortland Specialty Co.* case. But I believe the facts of the instant case fall within the provisions of (B) of the above section, which reads:

(1) The term reorganization means: \* \* \* (B) a transfer by a corporation of all or part of its assets to another corporation if immediately after the transfer the transferor or its *stockholders* or both are in control of the corporation to which the assets are transferred. [Italics supplied.]

It seems to me that in order to determine whether there was a reorganization within the meaning of the above quoted language, the whole picture must be viewed together. What happened was this: The Farmers Oil & Fertilizer Company found itself in financial difficulties and its stockholders decided to liquidate and dissolve and use the money obtained from the liquidation to pay as far as it would go and if by chance the assets sold for more than enough to pay creditors, then to distribute the proceeds to stockholders. There of course was not the slightest prospect that anything would be left for the stockholders. Before this plan was carried into effect certain stockholders decided they would save something out of the wreckage, if they could. So they called a meeting of the stockholders for this purpose, urging all stockholders to be present. Notice was sent to everyone. At this meeting it was determined to organize a new company, with the same capital stock as the old company; to buy the assets of the old company at the sale which had been advertised; and then to convey the assets to the new corporation in consideration of its capital stock and certain assumption of indebtedness. This was done. It is true that not all the stockholders of the old corporation participated in the plans of reorganization, but there is nothing peculiar about that.

It frequently happens that, when a corporation becomes insolvent and finds it necessary to reorganize, some of the stockholders, for financial reasons or otherwise, are unable to participate in the plans and have to drop out. Sometimes they drop out of their own accord, because they do not care to hazard any more money in the enterprise, but the reorganization, none the less, takes place, even if some of the old stockholders do become weary of the fight and drop out. Another thing which I think makes no difference is that the property was sold at auction to the 19 individual stockholders as the highest bidders instead of to the petitioner corporation. The majority opinion seems to lay emphasis on that point, saying, " Petitioner did not acquire the properties of another corporation; it acquired the properties of 19 individuals for whom Murphy was acting as trustee." In my judgment it should be held that the 19 individuals were acting for the corporation which they had agreed they would organize under the laws of the State of Texas. See *Carel Robinson*, 19 B. T. A. 751.

So it seems clear to me that the facts of the instant case show a reorganization within the meaning of section 203 (h) (1) (B) of the Revenue Act of 1926.

But, in order that a transferor corporation take the same basis for gain or loss and the same basis for depreciation as its predecessor corporation, it is necessary that it do more than show that a reorganization has taken place. It must meet the conditions of section 204 (a) (7) of the Revenue Act of 1926, which reads:

If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization and *immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons, or any of them, then the basis shall be the same as it would be in the hands of the transferor* * * *. [Italics supplied.]

I take it that the clause of the foregoing section which I have italicized means that if not more than 20 per cent of new blood is taken into the reorganized corporation, then it shall be entitled to take the same basis of cost as its predecessor corporation, provided these same stockholders owned 80 per cent control in the predecessor corporation. If however more than 20 per cent of new blood is taken into the reorganized corporation, it loses the right to take the same basis.

I also call attention to the fact that the 80 per cent control which is to remain in the hands of the old interests need not remain in the same persons in the same proportion. The statute says that it may remain " in the same persons or *any of them.*" In the instant case 100 per cent control remained in the hands of, not all of the same persons who were stockholders of the old corporation, but 19 of them, and *no* new blood was taken in.

But even this is not enough to give the transferee corporation the same basis for gain or loss and for depreciation as the old corporation had. The same group of old stockholders which now holds 100 per cent control in the new corporation must have owned at least 80 per cent control in the old corporation. And it is at this point that petitioner falls down in its effort to show that it is entitled to take the same basis of cost as its predecessor corporation. The group of 19 stockholders of the old corporation who agreed to the plans of reorganization, and did in fact carry them through, owned only 66.2 per cent of the stock of the old corporation, and that is not enough.

The question involved may be stated as follows: Where, before the transfer, a person or group of persons have less than 80 per cent interest or control and, after the transfer, such person or group of persons, have more than 80 per cent interest or control, and no

new blood is taken in, does section 204 (a) (7) apply? I do not think it does.

In the case of *Monarch Electric & Wire Co.* v. *Commissioner,* 38 Fed. (2d) 417; affirming 12 B. T. A. 158, section 331 of the Revenue Act of 1921 was involved. This section, except as to percentages, contained language the same as the section involved here. Nevertheless, the judges in their discussion assumed that the same group of stockholders owning 50 per cent control after the reorganization (that was the percentage involved in section 331) must have also owned 50 per cent control in the old corporation.

For example, Judge Alschuler, in a concurring opinion, said:

> To my mind the evident intent of the section is, that if, after any such change, any person or persons, singly or collectively, shall hold in the reorganized business as much as 50 per cent of the entire interest or control therein and *are the same person or persons who, singly or collectively, held as much as 50 per cent interest or control in the old business.* * * * [Italics supplied.]

I think the above language of Judge Alschuler represents a correct construction of the language there involved and applies in this proceeding to section 204 (a) (7) of the Revenue Act of 1926.

Therefore, because these same 19 stockholders who owned 100 per cent control in the new corporation did *not* own as much as 80 per cent control in the old corporation, petitioner is not entitled to take the same basis of cost as its predecessor corporation. I therefore concur in the result reached by the majority opinion, but I dissent from the ground upon which it was based, to wit, that the facts do not show a reorganization within the provisions of section 203 (h) (1).