GENERAL FINANCE COMPANY OF PHILADELPHIA, PA., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76539.   Promulgated July 16, 1935.

*David S. Malis, Esq.*, for the petitioner.
*C. C. Holmes, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of deficiencies for the period January 20 to December 31, 1930, and for the calendar year 1931 in the amounts of $811.63 and $1,690.93, respectively. The petition alleges:

4. The determination of the taxes as set forth in said notice of deficiency is based upon the following errors:

A. In determining the taxable net income of the petitioner for the year 1930, the Commissioner erroneously disallowed a statutory net loss of $24,808.52 for the years 1928 and 1929. The Commissioner has erroneously disallowed this loss upon the basis that the domestication of the Delaware Corporation into a Pennsylvania Corporation prohibited the petitioner from carrying the loss of the two preceding years forward.

B. In determining the taxable net income of the petitioner for the year 1931, the Commissioner erroneously disallowed a statutory net loss of $8,228.25, balance of statutory net loss carried forward from the year 1929. The Commissioner has erroneously disallowed this loss upon the basis that the domestication of the Delaware Corporation into a Pennsylvania Corporation prohibited the petitioner from carrying the loss of the two preceding years forward.

On August 31, 1921, the General Finance Co. of Philadelphia, Pa., was organized as a Delaware corporation in accordance with the laws of that state. After its incorporation, it filed annual returns with the proper authorities of the Commonwealth of Pennsylvania as a foreign corporation, and regularly made such payment of taxes as a foreign corporation as it was required to do under the laws of the Commonwealth of Pennsylvania.

On December 30, 1929, by proper meeting of the stockholders of the corporation, held at the office of the corporation in Philadelphia, it was resolved that the necessary procedure in accordance with the laws of the Commonwealth of Pennsylvania be undertaken and

adopted to domesticate this corporation under the laws of the Commonwealth of Pennsylvania in order to avoid the duplication of effort in filing corporate returns with the State of Delaware, and corporate returns as a foreign corporation with the Commonwealth of Pennsylvania. Accordingly, written application was addressed to the Governor of the Commonwealth of Pennsylvania, signed by the president and secretary of the corporation, and given under the seal thereof, in compliance with the provisions of the law of the Commonwealth of Pennsylvania, approved June 9, 1881, entitled "An Act to Authorize Foreign Corporations to become Corporations of Pennsylvania and to prescribe the method of their so doing ", and, pursuant thereto, the Governor of the Commonwealth of Pennsylvania on January 20, 1930, approved the application for domestication of the corporation.

Up to the time of and following the domestication of this corporation, its sole office and place of business remained at the corner of Broad and Vine Streets, Philadelphia, Pennsylvania, and the officers and directors remained the same after its domestication. The same stockholders who were the stockholders prior to the domestication continued to be the stockholders holding the same certificates and shares of stock which they held prior to the domestication and the authorized capital stock and the whole financial structure of the Delaware corporation remained exactly the same after its domestication. After domestication the corporation made no further returns with any of the authorities of the State of Delaware. The powers granted the corporation under its domestication remained verbatim the same as they had been as a Delaware corporation.

For the year 1930 the petitioner claimed on its return a loss of $24,808.52 representing a net loss to be carried forward under the applicable provisions of the statute. For the year 1931 the petitioner claimed on its return a loss of $8,228.25 representing a net loss to be carried forward under the applicable provisions of the statute. The claimed net losses of the Delaware corporation for 1928 and 1929 were disallowed as deductions from the petitioner's income for the year 1930 upon the ground that the net losses of the Delaware corporation could not be carried forward and deducted from the gross income of the petitioner, a Pennsylvania corporation. The notice of deficiency upon which this proceeding was brought states: " The Bureau holds that the net loss of the old corporation cannot be carried forward to the new company."

Section 117 (b) of the Revenue Act of 1928 provides as follows:

(b) *Net loss as a deduction.*—If, for any taxable year, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year

(hereinafter in this section called "second year"), and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called "third year"); the deduction in all cases to be made under regulations prescribed by the Commissioner with the approval of the Secretary.

The law is well settled that the net loss provisions of the revenue acts are not applicable to a corporation newly organized; or, in other words, that a corporation may not deduct from its gross income net losses sustained by a predecessor corporation. *White House Milk Co.*, 2 B. T. A. 860; *Maytag Co.*, 17 B. T. A. 182; *West Point Marion Coal Co.*, 19 B. T. A. 945; *Plumber's Supply Co.*, 20 B. T. A. 459; *Standard Silica Co.*, 22 B. T. A. 97; *Athol Manufacturing Co.*, 22 B. T. A. 105; affd., 54 Fed. (2d) 230; *Clark Dredging Co.*, 23 B. T. A. 503; *Overbrook National Bank of Philadelphia*, 23 B. T. A. 1390; *New Colonial Ice Co.*, 24 B. T. A. 886; affd., 66 Fed. (2d) 480; 292 U. S. 435; *Hartford-Empire Co.*, 26 B. T. A. 134; *Elliott-Granite Linen Corporation*, 20 B. T. A. 936; *Farmers Cotton Oil Co.*, 27 B. T. A. 105.

Petitioner contends, however, that it is the same corporation which sustained the net losses for the years 1928 and 1929; that under the statutes of the Commonwealth of Pennsylvania the domestication of a foreign corporation does not result in bringing a new corporation into being in such a manner as deprives it of the right to bring forward the net losses of the foreign corporation which has been domesticated.

Section 1 of the Act of June 9, 1881 (P. L. 89), provides what foreign corporations may become domestic, and prescribes the kind of application to be filed by a foreign corporation applying for a domestic charter. This section provides:

Said certificate shall be accompanied by a certificate, under the seal of the corporation, showing the consent of a majority in interest of such corporation to such application for a charter, and to a renunciation of its original charter, and of all privileges not enjoyed by corporations of its class, under the laws of this commonwealth.

The application must be filed with the Secretary of the Commonwealth of Pennsylvania and advertised the same as an application for any corporate charter. At the termination of the advertisement period it is presented to the Governor, who, if he finds that all requirements have been complied with, directs letters patent to issue. Section 3 of the said Act of June 9, 1881, provides as follows:

From the date of said letters patent said corporation shall be and exist as a corporation of this commonwealth, under the provisions of law regulating corporations of its class and of its charter; and all of the rights, privileges, powers, immunities, lands, property and assets, of whatever kind or character the same may be, possessed and owned by the original corpo-

ration, shall vest in, and be owned and enjoyed by, the said corporation so created, as fully and with like effect, as if its original charter had remained in force, save as by general law and said certificate expressly stated otherwise; and all suits, claims and demands by said corporation, in existence at the date of said new charter, shall and may be sued, prosecuted and collected, under the laws governing the said corporation prior to its new charter, and claims and demands of every nature and character in existence at the date of said new charter may be collected from and of said new chartered corporation, as fully and with like effect as if no change had taken place.

Letters patent were issued to the petitioner on January 20, 1930. This instrument reads in part as follows:

THEREFORE, KNOW YE, That under authority of the Constitution and laws of said Commonwealth in such case made and provided I Do BY THESE PRESENTS, which I have caused to be made PATENT and Sealed with the Great Seal of the State, create, erect and incorporate the stockholders of said corporation, their associates and successors, and also those who may thereafter become subscribers or holders of the stock of the said corporation, into a body politic and corporate in deed and in law by the name chosen and herein before specified, who shall have succession Perpetually and shall be invested with and have and enjoy all the powers, privileges and franchises incident to a corporation and be subject to all the duties, requirements and restrictions specified and enjoined in and by the said acts of the General Assembly and all other laws of this Commonwealth.

The minutes of a special meeting of the stockholders of the petitioner held December 30, 1929, provide in part as follows:

The president stated that this meeting had been called pursuant to a written waiver, which waiver read [in part] as follows, to wit:
    * * * and particularly do we consent to the holding of said meeting for the purpose of considering the advisability of domesticating this corporation so that it may become a corporation of the State of Pennsylvania, instead of a corporation of the State of Delaware; * * *
Upon motion duly made and seconded, it was

RESOLVED, that the proper officers of this corporation be and they are hereby authorized and empowered to make an application to the Governor of the State of Pennsylvania, in accordance with the provisions of the Act of June 9, 1881, entitled *"An Act to authorize Foreign Corporations to become corporations in Pennsylvania,"* to prescribe a mode for their so doing, so as to domesticate this said corporation in accordance with the terms of said act.

*     *     *     *     *     *     *

Upon motion duly made and seconded, it was further

RESOLVED that the stockholders of this company do hereby agree and consent to the making of an application to the Governor of the State of Pennsylvania for a charter under the laws of the said State and to the renunciation by this corporation of its original charter and of any and all rights and privileges now enjoyed by it and which are not enjoyed by corporations of its class under the provisions of the laws of the State of Pennsylvania. [Italics supplied.]

In making its argument that the petitioner is the same corporation which was chartered by the State of Delaware on August 31, 1921, the petitioner relies strongly upon the decision of the Supreme Court

in *Weiss* v. *Stearn*, 265 U. S. 241. The question presented in that proceeding was whether upon a reincorporation in the same state the stockholders received a gain upon the exchange of shares of the old company for the shares of the new. The Court held that there was no gain meeting the definition of " income " as given in *Eisner* v. *Macomber*, 252 U. S. 189; *Towne* v. *Eisner*, 245 U. S. 418, and others.

The petitioner also cites numerous cases involving the question of the status of a foreign corporation either licensed to do business in a given state or domesticated within that state. In *Missouri Pac. Ry. Co.* v. *Meeh*, 69 Fed. 753, 758, it was stated:

* * * Instead of merely licensing a foreign corporation to operate a railroad or to transact any other business within its borders, a state may, for reasons of its own, adopt the foreign corporation by creating it a domestic corporation with the same franchises and powers that it exercises in the state which originally created it, or with powers that are less or more extensive. When a state pursues the latter course, and adopts the foreign corporation as one of its own creation, it follows, we think, that all of its subsequent acts and transactions within the state of its adoption are the acts of a domestic corporation * * *.

In *James* v. *St. Louis & S. F. Ry. Co.*, 46 Fed. 47, 49, it was stated:

* * * The principle is now settled by the courts that a corporation of one state may, by appropriate legislation, be made a citizen of another state. Whenever the effect of state legislation is to adopt a foreign corporation as one of its own, it becomes a citizen as well of the state adopting it as of that from which it obtained its original charter. *Railroad Co.* v. *Wheeler*, 1 Black, 286; *Railway Co.* v. *Whitton*, 13 Wall. 270; *Railway Co.* v. *Vance*, 96 U. S. 450; *Railway Co.* v. *Alabama*, 107 U. S. 581, 2 Sup. Ct. Rep. 432; *Pennsylvania R. Co.* v. *St. Louis, A. & T. H. R. Co.*, 118 U. S. 290; * * *

This array of able decisions settles the question of the power of the state to make a foreign corporation a domestic one. As to whether a state has done so in a given case, or merely licenses a foreign corporation to do business in the state, is a simple question of legislative intent. * * *

In *Adams* v. *Chattanooga Co., Ltd.*, 128 Tenn. 505; 161 S. W. 1131, it was stated:

The insistence of complainants is that, under these statutes and the decisions based thereon, a distinct and separate corporate entity was created in this state when the Chattanooga Company, Limited, complied with the law by filing its charter in the proper office in this state—a corporation so far dissociated from the British entity as that it may be wound up in a Tennessee court in all respects as could a corporation originally chartered under the laws of this state, without reference to the status or condition of the foreign unity.

The true concept, as indicated by our decisions, based upon the statutes referred to, appears to us to be that a corporation so domesticated becomes, not a new and distinct entity, but only a corporation of this state quo ad hoc any property and acts within its jurisdiction. *Ohio & Miss. R. Co.* v. *Wheeler*, 1 Black, 297, 17 L. Ed. 130; *Young* v. *Iron Co.*, 85 Tenn. 189, 197, 2 S. W. 202, 4 Am. St. Rep. 752; 19 Cyc. 1204. * * *

In *Railroad Co.* v. *Harris*, 12 Wall. 65, 82, the Supreme Court of the United States stated:

   \*   \*   \*   Nor do we see any reason why one State may not make a corporation of another State, as there organized and conducted, a corporation of its own, *quo ad hoc* any property within its territorial jurisdiction.   \*   \*   \*

In petitioner's brief in this proceeding it is stated:

It is respectfully submitted that the sole question to be determined in this case is whether the Delaware corporation, as domesticated under the laws of Pennsylvania, is the same taxable entity or whether they are two separate and distinct corporate entities for the purposes of taxation. As this question is determined, so the decision must be in favor of the petitioner or the respondent.

We are of opinion that the above citations of cases are not in point in this proceeding. We think that they would be in point if the petitioner had continued in existence as a Delaware corporation. In such case the petitioner corporation would be both a Delaware corporation and a Pennsylvania corporation, and it could not be said that the corporation which filed its returns for the taxable periods here in question was a different corporation from that which filed returns for 1928 and 1929. Although the stipulated facts do not show any facts with reference to the dissolution of the Delaware corporation or to the transfer of assets from the Delaware corporation to the petitioner, the stockholders of the Delaware corporation were required, in making application for a Pennsylvania charter, to renounce the Delaware charter. In the absence of any evidence to the contrary, we conclude that the Delaware corporation ceased to exist on January 20, 1930. We likewise conclude that the assets of the Delaware corporation were transferred to the petitioner, a Pennsylvania corporation, on the same date by operation of law.

Counsel have not called to our attention, nor have we been able to find, any decision of the courts of Pennsylvania which has a distinct bearing upon the question in issue. In *Pennsylvania Co. for Insurances on Lives & Granting Annuities* v. *Commissioner* (C. C. A., 3d Cir.), 75 Fed. (2d) 719, affirming 29 B. T. A. 1285, it was held that the effect of the consolidation of two Pennsylvania corporations in 1929 was to create, under state law, a new corporation, which was not entitled to deduct a net loss sustained by one of its predecessor corporations. In the course of its opinion the court stated:

Deductions in calculating federal income taxes are not matters of personal right. "Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed." *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435. And further, the right of deduction, when accorded by statute, is available only to the taxpayer who suffered the loss. *New Colonial Ice Co.* v. *Helvering*, *supra; Busch* v. *Commissioner*, 50 Fed. (2d) 800.   \*   \*   \*

The theory of the petitioner appears to be that it is the Delaware corporation which has simply stepped into a new pair of shoes—the charter obtained from the Commonwealth of Pennsylvania. We do not think that this theory is sound. The Delaware corporation was a creation of the State of Delaware. It derived its life and being from the laws of that state. The Pennsylvania corporation was not the *business* conducted by the entity given life by the laws of Delaware. The Delaware charter was the vehicle that carried that business and the assets used in conducting it. When the Pennsylvania charter was obtained a new vehicle was obtained and the assets and the business formerly carried by the Delaware entity were transferred to a new vehicle—the Pennsylvania charter. The petitioner derives its life from the Commonwealth of Pennsylvania. As a Pennsylvania corporation it is subject to the laws of Pennsylvania and not to the laws of Delaware. Its rights and liabilities are different from those which the Delaware corporation had.

As stated by the Supreme Court in *New Colonial Ice Co.* v. *Helvering, supra:*

We come then to an alternative contention that, even though the section be not as broad as claimed, the deduction should be allowed, because " for all practical purposes the new corporation was the same entity as the old one and therefore the same taxpayer." This is not in accord with the view on which the stockholders and creditors proceeded when the new company was brought into being. They deserted the old company and turned to the new one because they regarded it as a distinct corporate entity and therefore free from difficulties attending the old one. Having sought and reaped the advantages incident to the change, it well may be that they would encounter some embarrassment in now objecting to an incidental and remote disadvantage such as is here in question. But, be this as it may, we are of opinion that in law and in fact the two corporations were not identical but distinct. This was plainly implied in the transfer of the assets and business from one to the other. That transaction was voluntary and contractual, not by operation of law. Thereafter neither corporation had any control over the other: the old corporation had no interest in the assets or business, and the chance of gain and the risk of loss were wholly with the new one. Thus the contention that the two corporations were practically the same entity and therefore the same taxpayer has no basis, unless, as the petitioner insists, the fact that the stockholders of the two corporations were substantially the same constitutes such a basis.

The action of the respondent in disallowing as deductions from the petitioner's gross income for the period January 20 to December 31, 1930, and for the calendar year 1931, net losses of the Delaware corporation for the calendar years 1928 and 1929, was correct.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Seawell, dissenting: I am persuaded that the petitioner was never two corporations. The laws of Pennsylvania " authorize foreign corporations to become corporations of Pennsylvania." The ambulatory process provided for doing so does not require the foreign corporation to change its identity any more than the naturalization laws of the United States require a candidate for citizenship in this country to change his identity. The corporation and the individual must each renounce the old allegiance and acknowledge the new. But neither thereby becomes a new entity or can thereby procure release from debts or escape from crimes committed. Then, too, if petitioner had first to change its identity, make itself into a new corporation before or during the process of domestication, a " *foreign corporation* " would not become a corporation of Pennsylvania at all and the statute would belie its title.

A recital of what was done here negatives any idea of the organization or reorganization or creation of a new corporation or any metamorphosis of an old into another or new corporation. Petitioner was located in Philadelphia and did not move nor change its name. It had no election of a new president or of a board of directors, or of other officers; but all its officers remained, without new election or new designation, in their several stations. There were no new stockholders and no new stock or new certificates of stock issued, but every stockholder and his holdings of stock after domestication was the same as before. There was no change in its financial structure; its assets after domestication were identically the same as before, and this without any alteration, removal, transfer or conveyance of them. In short, its domestication was a change of allegiance only and was wrought without the creation of any new corporation.

Sternhagen and Matthews agree with this dissent.