WHITTAKER v. BACON, Sheriff, et al.—65 S. W. (2d) 1083.

Western Section. April 28, 1933.

Petition for Certiorari denied by Supreme Court, December 15, 1933.

Canada, Williams & Russell, of Memphis, for appellant.
W. C. Rodgers, of Memphis, for appellees.

SENTER, J. This is a replevin suit brought by the complainant, S. F. Whittaker, against Wm. J. Bacon, Sheriff of Shelby County, and one Henry Hearts, defendants, to recover possession of an aeroplane. The bill was dismissed as to the sheriff, and the litigation is now between complainant and the defendant Hearts.

The complainant, in his bill, predicates his claim and right to the possession of the aeroplane by virtue of the purchase of the same by him at a sale by the trustee in bankruptcy of the Arrow Airways, Inc. The defendant claimed the right to possession by virtue of a judgment and order of sale in the circuit court of Shelby county in the case of Henry Hearts v. Southern Aviation & Transport Company. The aeroplane belonged to the Southern Aviation & Transport Company. On May 6, 1930, Hearts sued that company for damages in the circuit court of Shelby county, and on November 22, 1930, he obtained a writ of attachment in that suit and had it levied on said aeroplane as the property of the Southern Aviation & Transport Company.

On August 9, 1930, the Southern Aviation & Transport Company filed its application in the office of the secretary of state of the state of Tennessee for an amendment to its charter, changing its corporate name from ''Southern Aviation & Transport Company'' to ''Arrow Airways, Inc.'' This amendment to the charter was never completed by registration of same in the register's office of Shelby county, Tenn., the county in which the corporation had its principal place of business.

On January 28, 1931, a voluntary petition in bankruptcy was filed by the Arrow Airways, Inc. The petition was signed and verified by its president, F. E. Bruce, who was also the president of the Southern Aviation & Transport Company. In the voluntary petition in bankruptcy, the aeroplane involved was scheduled as an asset of the Arrow Airways, Inc., but the claim of Henry Hearts was not scheduled as a liability. However, on February 10, 1931, the bankrupt filed a petition in said bankruptcy proceeding, seeking to amend its schedule so as to list as a liability the claim of Henry Hearts for damages sued for in the circuit court case, but it does not appear that any order was ever entered allowing the schedule to be so amended. No legal notice of the bankruptcy proceeding was given

to Henry Hearts, and he did not enter any appearance in the bankruptcy proceeding.

Upon the filing of the petition by the Arrow Airways, Inc., it was adjudged a bankrupt by the United States District Court for the Western Section of the Western Division of Tennessee, in Memphis.

The Southern Aviation & Transport Company, nor the Arrow Airways, Inc., made no defense to the damage suit brought by Hearts against the Southern Aviation & Transport Company; nor was the trustee in bankruptcy of the Arrow Airways, Inc., made a party to that suit.

On June 9, 1931, a writ of inquiry was ordered in the circuit court case, and a verdict and judgment was entered in favor of Hearts against the Southern Aviation & Transport Company, in the sum of $1,400; and on June 19, 1931, the attachment levied on the aeroplane on November 22, 1930, was sustained, and an order of sale was entered directing the sheriff to sell said aeroplane to satisfy said judgment. It does not appear that complainant had any notice of that suit, and we find nothing in the record to support the finding by the chancellor that complainant had actual notice of that suit and was present in the court room with his attorney when these proceedings were had.

Pursuant to the order of sale, the sheriff proceeded to advertise the aeroplane for sale for August 26, 1931; whereupon, on August 19, 1931, S. F. Whittaker, the complainant herein. filed a replevin suit against the sheriff to recover possession of said aeroplane, and obtained possession of the aeroplane on that date. However, that bill was voluntarily dismissed by the complainant on September 5, 1931, and the aeroplane restored to the possession of the sheriff by decree of the court in that cause, and the sheriff again advertised it for sale for September 19, 1931; whereupon the complainant filed the present bill against the present defendant, and again obtained possession of said aeroplane under the replevin writ in the second suit, on September 14, 1931.

At the hearing of this cause, the chancellor found the issues in favor of the defendant, and fixed the value of the aeroplane at $2,000, and decreed a dismissal of complainant's bill, and that complainant return the aeroplane in question to the defendant Wm. J. Bacon, sheriff of Shelby county, and further decreed that, upon his failure so to return the same within five days from the date of the entry of the decree. that Wm. J. Bacon, sheriff. have and recover of and from the complainant, S. F. Whittaker. and Mrs. M. K. Briggs, the surety on his replevin bond, the sum of $2,000, the value of said aeroplane. with interest thereon from the date of its seizure, amounting to $85, amounting in all to the sum of $2,085. and further decreed that "said defendant Wm. J. Bacon, Sheriff, will also have and recover of and from the said S. F. Whittaker, and Mrs. M. K.

Briggs, surety on the replevin bond, all damages for the wrongful seizure and detention of said aeroplane; and for the purpose of ascertaining such damages, the cause is now referred to the Clerk and Master to ascertain and report from the proof on file and such further proof as the respective parties may offer, the amount of damages suffered by the defendant, Wm. J. Bacon, Sheriff, by reason of the wrongful suing out of a writ of replevin in this cause, and of the wrongful seizure and detention of said aeroplane. . . ."

Pursuant to the above order of reference, the master made his report, and in which report the master seemed to have confined the inquiry to the question of the difference in the value of the aeroplane at the time it was replevined, and its value at the time of the reference, "i. e., the difference, if any, in its value, at the time it was replevined, and its value at the present time, which difference, if any (and if said present vaue is less than said value when replevined), represents the damages recoverable by the defendant (the Sheriff for the benefit of defendant, Hearts) against complainant and the surety on his replevin bond—a situation which presents for determination two questions, (1) What was the value of said aeroplane at the time it was replevined? (2) What is the value of said aeroplane at the resent time?"

The master then proceeds to report that the value of the aeroplane at the time it was replevined had been fixed by the chancellor at $2,000; and fixed the value of the aeroplane at the time of the report at $500, reporting that the aeroplane had therefore depreciated in value since it was replevined by complainant $1,500, and reported "that the defendants had been damaged, by the unlawful replevin of said aeroplane, in said sum of $1,500.00, and that they are entitled to recover judgment against complainant, and surety on his replevin bond, damages to the said sum of $1,500.00."

It appears that the surety on complainant's replevin bond, Mrs. W. K. Briggs, filed exceptions with the master to the report. Her exceptions to the report were sustained by the master, and from this action of the master in sustaining Mrs. Briggs' exceptions to his report, the defendants appealed to the chancellor. The chancellor sustained the appeal, and held that Mrs. Briggs could not be heard to except to the report, since she was but a surety on the replevin bond and not a party to the suit, and proceeded to confirm the report of the master, and in the final decree gave judgment for the sum of $2,085, as previously decreed as the value of the aeroplane at the time it was replevined, plus interest, and also for the further sum of $1,500 reported by the master as damages for the wrongful suing out of the replevin writ.

The chancellor filed with the record an opinion and a finding of the facts. We concur in the facts as found by the chancellor in part, and to the extent that we have stated the facts in the first part

of this opinion. However, the chancellor found as a fact, in part, as follows:

"On January 28, 1931, the Arrow Airways, Inc., filed a voluntary petition in bankruptcy, and it was adjudicated a bankrupt on the same day. This petition was filed by F. E. Bruce, President, but without authority of any resolution of the stockholders or Board of Directors."

We do not find anything in the record to warrant the finding by the chancellor that the filing of the petition by F. E. Bruce, president, was without authority "of any resolution of the stockholders or Board of Directors," except that the voluntary petition in bankruptcy filed by the president, F. E. Bruce, does not contain an averment that its filing was authorized by resolution passed by the stockholders or board of directors. In other words, there is nothing in the record that shows affirmatively that such authority was not given to the president by the stockholders or board of directors of the corporation. The record on this question is entirely silent. To this extent we disagree with the finding of the facts as found by the chancellor, and also the further fact with reference to complainant Whittaker being present and having actual knowledge of the suit of Hearts against the Southern Aviation & Transport Company, as set forth hereinbefore.

In the opinion filed, the chancellor based his action in dismissing complainant's suit and in rendering judgment against complainant and surety on the replevin bond on several grounds: First, that the amendment to the charter changing the name of the corporation to the Arrow Airways, Inc., was not perfected, and hence the corporate name not changed, and that the corporation was not therefore authorized to engage in business under the name of Arrow Airways, Inc., or to file a petition in bankruptcy in that name. Second, that the president of the corporation had no authority to file a voluntary petition in bankruptcy in its behalf, without a resolution of the directors authorizing such action to be taken; and that in such cases the court is without jurisdiction to adjudicate the corporation a bankrupt, or to administer its assets in bankruptcy. The chancellor further held that the fact that the attachment was levied within four months next preceding the filing of the petition in bankruptcy could not avail the complainant anything, since the court had no jurisdiction in the bankruptcy proceeding. The chancellor further held that, since complainant has no title to the aeroplane by virtue of the purchase from the trustee in bankruptcy, he is not concerned with the question whether the sheriff's levy was valid or invalid, that the bill admits the plane was in the possession of the sheriff, and that complainant had failed to show title to or right to possession in himself. We will add that the defendants in their answer relied upon the plea of res adjudicata, basing same upon the former suit

which had been voluntarily dismissed. The chancellor held that, since the dismissal of the suit was voluntary and the matters not heard on the merits, it did not operate as res adjudicata to the second suit.

From the decree of the chancellor complainant has appealed to this court, and has assigned errors.

The several assignments of error are directed to the holding of the chancellor (1) that the bankruptcy proceedings of the Arrow Airways, Ins., were void, because the record of that petition did not show any authority on the part of F. E. Bruce from the board of directors to file said petition; (2) that the president of Arrow Airways, Inc., was not authorized to file a voluntary petition in bankruptcy on behalf of the corporation, and in consequence holding that the said bankruptcy proceedings were therefore void; (3) that Arrow Airways, Inc., had no right to do business under that name; and that the bankruptcy proceedings was void because it was filed in the name of the Airways, Inc., on the ground that the amendment changing the corporation's name was never registered in Shelby county; (4) in holding that the defendant Henry Hearts had no notice of the bankruptcy proceedings in the case of Arrow Airways, Inc., bankrupt; (5) in holding that the bankruptcy proceedings of Arrow Airways, Inc., were of no effect against Henry Hearts, or against the alleged attachment of the plane herein involved; (6) in refusing to hold that the bankruptcy proceedings were valid, and that any lien on the plane in question resulting from the alleged attachment on November 22, 1930, was vacated and annulled upon the filing of the petition in bankruptcy by Arrow Airways Iᵖ and the consequent adjudication in bankruptcy, and consequently, in failing to decree complainant's right to the possession of the plane in question; (7) in holding that complainant could not question the validity of the levy and seizure of the plane involved under the attachment writ of November 22, 1930; (8) in overruling the master's action in receiving and filing the exceptions to his report on behalf of Mrs. W. K. Briggs, surety on complainant's replevin bond, and in granting the defendant's application to strike the said exception, and in confirming the master's report; (9) in entering a final decree for $3,500 against complainant and the surety on his replevin bond.

Under the first group, it is the contention of appellant that the decree in the United States District Court adjudicating the Arrow Airways, Inc., a bankrupt, cannot be collaterally attacked by a creditor. This contention proceeds upon the theory that the bankruptcy court is a court of general jurisdiction, and had jurisdiction of the subject-matter and of the party.

█ █ Other questions out of the way, we are of the opinion that the adjudication in bankruptcy comes within the rule that a court of general jurisdiction, having jurisdiction over the subject-matter

and the parties, cannot be collaterally attacked, and on such attack such proceedings will be presumed to have been based upon all necessary steps and evidence. The United States District Court is a court of bankruptcy jurisdiction. The petition was filed in the proper district and in the proper division of that district, and upon the filing of the petition the order of adjudication was made and entered by the court. There is no provision in the bankruptcy Act (11 USCA) requiring the board of directors of a corporation to authorize the president to file the petition; and nowhere in the Bankruptcy Act, or any amendatory acts thereto, is there any requirement that a voluntary petition in bankruptcy filed by the president of a corporation must show on the face of the petition that its filing was authorized by the stockholders or board of directors. There is no such requirement by any corporation law or charter provision in the state of Tennessee.

Appellee cites and relies upon several federal cases in support of the contention that a voluntary petition in bankruptcy filed by an officer of the corporation, when not authorized by the board of directors, does not confer any jurisdiction, and hence the adjudication in bankruptcy is void. In re Jefferson Casket Co. (D. C.), 182 F., 689, 692; Regal Cleaners & Dyers, Inc., v. Merlis et al. (C. C. A.), 274 F., 915; In re Community Book Co., Inc. (D. C.), 10 F. (2d), 616; In re Vassar Foundry Co. (D. C.), 293 F., 248.

The Jefferson Casket Co. Case is from the District Court of New York, and the holding in that case is largely based upon certain New York statutes on the subject, and in which case the court said, after quoting portions of the New York statute: "In view of this statutory requirement, I think a petition in this court, in order to justify an adjudication in voluntary bankruptcy and a consequent transfer of all the property of the corporation, real and personal, to a trustee, should at least allege and show corporate action by the board of directors authorizing the petition and its execution by the officer signing the name of the corporation thereto. Such an act is not within the general scope of the duties of the president of such a corporation."

In that case much of the opinion is devoted to the New York statute on the subject of duties and obligations of officers and directors of the corporation and statutory requirements in the state of New York. The case of In re Southern Steel Company, 169 F., 702, is from the District Court of Alabama. This case involved the authority of the board of directors to authorize its attorney to do certain acts, and it was simply held that it did not constitute authority by the attorney to agree to the appointment of receivers and did not constitute an act of bankruptcy on the part of the corporation. The principal controversy in that case, however, was with reference to

the allowance of, and a division of, the attorneys' fees, and has but little, if any, application to the questions made here.

In Re Community Book Co., Inc., under the second headnote, it is said: "Filing of voluntary petition by corporation's president, without authority by board of directors, held not to give court jurisdiction; adjudication must be vacated." In that case it is held that the filing of a voluntary petition, signed and verified by the president of the corporation, on its behalf, without authority by board of directors, but after consulting with certain officers, held not act of corporation, and bankruptcy court acquired no jurisdiction, and that adjudication must be vacated. In that case it appeared that a creditor filed a petition in the bankruptcy cause, and made a direct attack, and based the attack on the ground that the president had not been authorized by the board of directors to file the petition. In that case it affirmatively appeared that the directors of the corporation had not by any resolution passed authorized the filing of the voluntary petition in bankruptcy.

However, there is nothing in that case that holds that the petition must show on its face that it was authorized by resolution of the board of directors. It was said on that question: "In the instant case it is conceded that there was no meeting of the board of directors whatever, and no corporate action."

In the case of Regal Cleaners & Dyers, Inc., v. Merlis, from the Circuit Court of Appeals, Second Circuit, there is a statement in the second headnote to the effect that there is no presumption of authority in an officer of the corporation to make and file a voluntary petition in bankruptcy, and he may not do so without the consent of the directors. However, in that case it appeared that the president of the corporation had filed an answer to an involuntary petition without athority from the directors, and it was held that the president could file an answer for the corporation where the board of directors were equally divided for and against adjudication. There was a dissenting opinion, however, by one of the judges. In that case it was also conceded that the board of directors did not authorize the filing of the answer. We think it clear from the brief opinion in that case that the question was as to whether there was a presumption of authority by virtue of his office as president, and we do not understand from that opinion that the holding of the court goes to the question that there is no presumption that the president was not authorized by the board of directors. Again, that was a direct attack being made in the same bankruptcy proceeding, and not a collateral attack in a separate suit in a different court, as in the present case. In discussing the topic of insolvency and bankruptcy, volume 8, Fletcher, Corporations, section 5200, pages 8817, 8818, it is said:

"In a voluntary proceeding, an adjudication of bankruptcy fol-

lows the filing of the petition good on its face, and allegations as to residence, domicile, and principal place of business are jurisdictional matters. A contention that a petition fail to show that the petitioner was not a municipal, railroad, insurance, or banking association and that it did not have the corporate seal attached .and failed to show that it was authorized by the corporation, comes too late after adjudication.''

To the same effect is Dodge v. Kenwood Ice Co. (C. C. A.), 204 F., 577. It would thus appear that, where the question is made in the bankruptcy court, but made after adjudication in bankruptcy, it comes too late. This is a practical statement that a failure to aver in the petition that the filing of the same was authorized by the board of directors is not jurisdictional, and, if the petition contains the essential averments as to residence, domicile, and principal place of business, that it meets the jurisdictional requirements.

We do not here have the case where it affirmatively appears that the filing of the petition by the president was not authorized by the corporation, or its board of directors. The record is entirely silent on this subject. If the United States District Court had jurisdiction of the subject-matter and the party, and being a court of general jurisdiction in bankruptcy matters, the adjudication in bankruptcy by that court cannot be collaterally attacked, and every presumption would be indulged in favor of the regularity of the proceeding, and the proceedings are not open to a collateral attack. It has been repeatedly held in this state that the judgments and decrees of a court of general jurisdiction, where it appeared that the court had jurisdiction of the subject-matter and the parties, cannot be collaterally attacked. Bass v. Southern Surety Co., 158 Tenn., 233, 12 S. W. (2d), 714; Reinhardt v. Nealis, 101 Tenn., 169, 46 S. W., 446; Puckett v. Wynns, 132 Tenn., 513, 178 S. W., 1184; Harris v. McClanahan, 11 Lea, 181; Hall v. Heffly, 6 Humph., 444; Greenlaw v. Kernahan, 4 Sneed, 371; Brewer v. Griggs, 10 Tenn. App., 378; 1 Collier on Bankruptcy (13 Ed.), pages 691, 692, 697, 699.

It is stated in Collier on Bankruptcy (13 Ed.), page 697, under the head of ''Collateral Attack:''

''Where the record shows jurisdiction, the adjudication is subject to impeachment only by a direct proceeding in a competent court, and may not be attacked collaterally in an action by the Trustee to set aside as a preference, nor in any other similar action or procedure.''

We cannot, therefore, agree to the conclusion reached by the learned Chancellor on this question.

The next question presented by the assignments of error is with reference to the holding of the chancellor that the bankruptcy proceeding was void on the ground that the amendment to the charter

changing the name of the corporation from Southern Aviation & Transport Company to Arrow Airways, Inc., had not been completed and perfected, and hence the adjudication was void because there was no such corporation in existence.

It is conceded that the amendment to the charter was never recorded in the register's office of Shelby county, Tenn. By section 9 of chapter 90 of the Public Acts of 1929, provision is made that the corporation existence began with the registration of the properly executed certificate of incorporation in the county where the corporation has its principal office. By section 11 of the same act provision is made for amending charters of incorporation, and the amendment to become effective only upon filing for registration in the register's office of the county. We think it settled in this state that the filing for registration in the register's office is necessary to complete the matter of incorporation, and this same requirement of the law with reference to amending charters is also a necessary step before the amendment becomes operative, and that these provisions of the law are mandatory. In the case of Shields v. Clifton Hill Land Co., 94 Tenn., 146, 28 S. W., 668, 26 L. R. A., 509, 45 Am. St. Rep., 700, it was held that:

The things which a statute requires to be done in order to complete the organization of a corporation as a body politic, are mandatory and essential, and, unless they are all substantially done, the charter is void and the incorporation is incomplete.

To the same effect is Mayor, etc., of City of Nashville v. Ward, 16 Lea, 27, and Brewer v. State, 7 Lea, 682. See, also, Collier v. Railroad Co., 113 Tenn., 111, 83 S. W., 155; and Hunter v. Swadley, 141 Tenn., 165, 207 S. W., 730.

It is the contention of appellee that, the failure of the corporation to file the documents amending the charter for registration in the register's office of Shelby county, being fatal, in that it did not operate to change the name of the corporation, therefore there was no such corporation in existence as the Arrow Airways, Inc., and for this reason the bankruptcy proceedings were absolutely void, and any property sold, or attempted to be sold, under any order made by the bankruptcy court was void, and sale made thereunder was void and conveyed no title or right to the purchaser in the property sold.

For appellant it is contended that a proceeding in bankruptcy is a proceeding in rem, and, if the property of the corporation, by whatever name, is brought into court by the filing of a petition in bankruptcy, that the bankruptcy court acquires jurisdiction of the property. It is further contended by appellant that in the present case the bankruptcy court took possession of all the property belonging to the corporation, whether it was the property of the corporation under its original name of Southern Aviation & Transport

Company, or under the name of Arrow Airways, Inc., would not make the proceeding void, but the court taking custody of the property in the bankruptcy proceedings could make a valid order of sale, and a valid order appointing a trustee to sell the property under the orders of the court, and, if the property is sold by the trustee in bankruptcy, the purchaser acquires a good title. It is the further contention of appellant that in the present case the particular aeroplane involved in this litigation was included in the schedule of assets by proper description, and was a part of the property of the corporation brought into court in the bankruptcy proceedings, and the bankruptcy court acquired jurisdiction over the property, and all orders made with reference thereto were legal and binding on all parties claiming an interest therein.

It is further contended under the fifth assignment of error that the defendant Henry Hearts had actual knowledge that the trustee in bankruptcy had taken possession of this aeroplane and had sold the same in the bankruptcy proceedings, and, further, that he was present at the time the purchaser flew the machine away. It is conceded by appellant, however, that the formal notice of the bankruptcy proceedings was not given to Hearts, as a creditor, and that the amended petition filed making Henry Hearts a creditor, by amending the schedule so as to show him a creditor, was never acted upon by the court.

It is the further contention of appellant that the only effect of Hearts not being listed as one of the creditors and not having the formal notice would be, at most, that he could make the claim that his debt had not been discharged. In other words, it is the contention of appellant that the only effect that this would have upon Henry Hearts would be that his claim against the Southern Aviation & Transport Company had not been discharged, and that he could still make his claim to share in the distribution of the assets of the corporation.

In support of his contention, appellant cites numerous Tennessee cases, among others, the case of East Tennessee & Ga. R. R. Co. v. Evans, 6 Heisk., 607, wherein it is said:

"A corporation may be known in its public proceedings by several names, as well as individuals, and may be sued by a name substantially answering its true appellation."

Another case cited and relied upon by appellant is Young v. South Tredegar Iron Co., 85 Tenn., 201, 2 S. W., 202, 206, 4 Am. St. Rep., 752, wherein the court states:

"The identity of a corporation is no more affected by a change of name than the identity of an individual. The use of a wrong name is not material if the corporation was really intended by the parties. A misnomer of a corporation has the same legal effect as a misnomer of an individual."

The rule in 7 R. C. L., under the title "Corporations" p. 127, is also cited and relied upon by appellant, which is:

"It seems to be well recognized that a corporation, as well as individuals, may have or be known by several names in the transaction of its general business so that it may enforce, as well as be bound by, contracts entered into in an adopted name other than the regular name under which it was incorporated."

Also the further statement of the rule in 7 R. C. L., p. 129:

"An authorized change in the name of a corporation has no more effect upon its identity as a corporation than a change of name of a natural person has upon his identity. It does not affect the rights of the corporation or lessen or add to its obligation."

While neither of the authorities above referred to and relied upon by appellant presents the question that we now have, yet these authorities have some application. A bankruptcy proceeding is equitable in character. It is a proceeding in rem. Under section 67f of the Bankruptcy Act of 1898 (11 U. S. C. A.), section 107(f), it is provided:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt, unless the court shall, on due notice, order that the right under such levy, judgment, attachment, or other lien shall be preserved for the benefit of the estate; and thereupon the same may pass to and shall be preserved by the trustee for the benefit of the estate as aforesaid. . . ."

In the case of In re Tune (D. C.), 115 F., 906, 911, it is said:

"Under that section [67f, 11 USCA, sec. 107(f)] the lien or the attachment is 'null and void,' and the 'property affected' is wholly 'discharged and released therefrom,' and passes to the trustee 'as a part of the estate of the bankrupt.' This construction is in harmony with the purpose of other provisions of the bankrupt law to have the whole estate, including the exempt property, pass to the trustee to be administered in the bankrupt court."

In the case of Bear v. Chase (C. C. A.), 99 F., 920, 924, speaking with reference to the effect of the same section and provision of the Bankrupt Law, it is said:

"Not only does this section make null and void the levy of the attachments under the circumstances of this case, but it expressly provides that the property affected by the levy shall be wholly discharged and released from the same, and that it shall pass to the trustee as a part of the bankrupt's estate, unless the court, upon due notice, shall order that the right under such lien be preserved

for the benefit of such estate. This section is broad and comprehensive in its terms, and too clear to admit of serious controversy.''

In re Breslauer (D. C.), 121 F., 910, 912, it is said:

''The filing of the petitions in bankruptcy were a caveat to all the world, and in effect an attachment and injunction.''

In the case of Mueller v. Nugent, 184 U. S., 1, 22 S. Ct., 269, 46 L. Ed., 411, it was held:

''The bankruptcy court has power to compel the surrender of money or other assets of the bankrupt in his possession, or that of some one for him, on petition and rule to show cause. The filing of a petition in bankruptcy is a caveat to all the world, and in effect an attachment and injunction, and on adjudication and qualification of trustee, the bankrupt's property is placed in the custody of the bankruptcy court, and title becomes vested in the trustee.''

We think it too clear for argument that the filing of the petition in bankruptcy has the effect of discharging prior attachment-levied within four months next proceeding the filing of the petition in bankruptcy, as in the present case. The property at once is transferred to the jurisdiction of the bankruptcy court, and there to be dealt with under the orders of that court and to the exclusion of any other court that may have taken jurisdiction of the property by attachment within four months preceding the filing of the bankruptcy proceeding. The mere filing of the petition is a caveat to all the world, and is in effect an injunction and an attachment. Admitting that the amendment to the charter of the Southern Aviation & Transport Company was never actually completed, and its name was not legally changed to the Arrow Airways, Inc., yet the fact remains that all the property belonging to the corporation under its corporate name of Southern Aviation & Transport Company was scheduled in the bankruptcy proceedings, and the bankruptcy court by proper orders and decrees directed a sale of this property. The bankruptcy court was concerned with reference to the res and not the name. The creditors named in the schedules were creditors of the corporation; whether its name had been legally changed was immaterial to the validity of their claims. The estate of the corporation was completely wound up in that court and in that proceedings. Independent of the question of formal notice to Henry Hearts, the attaching creditor of the Southern Aviation & Transport Company, the effect of the filing of the petition in bankruptcy was a complete discharge of Hearts' lien acquired by the attachment issued in connection with his suit in the state court. If the petition in bankruptcy had been filed in the true corporate name of the corporation, the filing of the petition would certainly have discharged the attachment, even though Hearts was not named in the schedule as a creditor, and even though he had no notice, either actual or formal. The discharge of the attachment was immediately

accomplished upon the filing of the petition, and took effect even before creditors are given formal notice, or before publication is made. So it is in the present case. Hearts' rights have not in any way been prejudiced because of the fact of the filing of the petition under the name it was filed, since, if the true corporate name had been used, the discharge of the attachment would have resulted from the filing of the petition, and even before an adjudication in bankruptcy. The filing of the petition is to all intents and purposes an injunction and attachment, and is a caveat to all the world. As to whether the filing of the petition in the wrong name, or the using of the new name and not the true corporate name, would operate as a discharge of Hearts' claim, is not the question before this court, nor was it the question before the chancellor. The only question before the chancellor was as to whether the bankruptcy proceeding was void, and hence the sale of the aeroplane involved was void. We think not. We think that it is immaterial that the petition was filed in the name of Arrow Airways, Inc., under the mistaken assumption by the corporation that its name had been changed by the amendment. The fact remains that it was the same corporation by whatever name, and it was the property of the same corporation that was brought into the bankruptcy court; and the same corporation was liquidated under the orders of the bankruptcy court.

We are therefore of the opinion that the learned chancellor was in error in holding that the bankruptcy proceedings were void, and that the sale of the aeroplane involved was void. We are of the opinion that the purchaser of the aeroplane at the sale took a good title thereto, and that complainant, who subsequently purchased from the purchaser at the trustee's sale, was the owner of the aeroplane at the time he filed his original bill, and was in consequence entitled to have his replevin suit sustained.

We are further of the opinion that in any event the decree of the chancellor was erroneous as to the amount of the judgment against the complainant and the surety on the appeal bond. It is clear from the report of the master that the only damage resulting to the defendants by reason of the replevin suit was the depreciation in the value of the machine. The chancellor found that the value of the machine at the time it was replevined was $2,000, and that, unless the property was turned over to the defendant sheriff within five days, that judgment for that amount, plus interest, was decreed in favor of defendants and against complainant and surety on the replevin bond. There was an order of reference to the master to report on the damage sustained, if any, by reason of the wrongful replevin of the property. The report of the master makes it clear that the only proof taken was with reference to the depreciation of the aeroplane after it had been replevined by complainant. His report showed that he found that the plane was then only worth $500,

and, since its value at the time it was replevined had been fixed at $2,000 by the decree of the chancellor, that defendants had therefore sustained a damage of $1,500. The surety on the replevin bond filed exceptions with the master to the report, and the master sustained the exceptions, but the chancellor held that the surety on the replevin bond, not being a party to the suit, could not be heard to except to the report, and therefore held that, the report being unexcepted to, it should be confirmed, and proceeded to render a decree for the sum of $3,585. This was $1,500 more than the value of the plane at the time it was replevined. The master did not report any damage resulting from the loss of use, or the rental value, but only reported that the plane had been damaged and that its present value was only $500. If the plane had been returned by complainant, this report would have been proper, and the decree should have been for $1,500, plus interest, but in no event to exceed the amount of the claim which Hearts, as the attaching creditor, had, which was $1,400 and court costs in the circuit court.

However, in the view we have taken, the amount of the judgment becomes immaterial. For the reasons above set forth, we think the learned chancellor was in error in dismissing complainant's bill and in denying him the relief sought thereunder, and in holding that the defendant was entitled to the possession of the property and in awarding judgment accordingly in favor of defendant and against complainant and the surety on the replevin bond.

Appellee filed a motion in this court to dismiss the appeal or to require appellant to strengthen the appeal bond, and filed certain affidavits in support of the motion on the subject of the value of certain property listed by the surety on the appeal bond. Appellant filed an answer to this motion supported by affidavits. Upon a consideration of the motion and the answer and the respective affidavits, we are of the opinion that the motion to dismiss the appeal, or to strengthen the appeal bond must be overruled.

It follows that the decree of the chancellor is reversed, and a decree will be entered here in favor of complainant for the retention of the possession of the aeroplane involved in the replevin suit. Appellee Henry Hearts will pay the costs of the cause, including the cost of this appeal.

Heiskell and Anderson, JJ., concur.