## WEST LUMBER CO. v. DAVIDSON.
### (No. 7530.)

(Court of Civil Appeals of Texas. Galveston. June 14, 1917. Rehearing Denied June 21, 1917.)

QUIETING TITLE &7(1)—CLOUD ON TITLE—STOCK—NEGOTIABILITY.

A bill will not lie to remove from title to lands of plaintiff cloud consisting of assertion by defendant of ownership in land by virtue of his being pledgee of stock in corporation which · formerly owned land and to enjoin sale of said stock, since stock is not negotiable, and therefore plaintiff's right to hold land free of lien asserted by defendant cannot be impaired or endangered by sale of stock.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14, 15, 17.]

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by the West Lumber ·Company against Lynch Davidson. Judgment for defendant, and plaintiff appeals. Affirmed.

Huggins & Kayser, of Houston, for appellant. Campbell, Myer, Myer & Freeman, of Houston, for appellee.

PLEASANTS, C. J. This appeal is from an order of the district court for the Sixty-First district denying an application of appellant for a temporary injunction. The following statement of the allegation of the petition upon which the injunction was sought is copied from appellant's brief and is sufficient for the purposes of this opinion:

"This suit was instituted by appellant, West Lumber Company, a corporation organized and existing under the laws of the state of Texas, against the appellee, Lynch Davidson, to remove cloud from title to certain lands described in plaintiff's petition. So far as this appeal is concerned, the particular cloud sought to be removed was the assertion by the defendant of some character of ownership in the land by virtue of his being the owner and holder or pledgee of certain stock in the W. W. West Company, which company had previously owned the land. Appellee advertised this stock for sale, claiming to hold it as pledgee for certain indebtedness in the sum of approximately $50,000; the sale being set for Monday, June 11th, at 10 o'clock. On receiving notice of the advertisement of this sale, appellant filed an amended petition, which petition is set out in the transcript, asking for a temporary injunction against the sale of said stock on said date. This injunction was denied by the court and an appeal immediately taken, and, upon motion and informal hearing, an understanding was reached with the attorneys for appellee that the sale was not to take place until this court could pass upon the appeal.

#### "Statement of the Case.

"Appellant, West Lumber Company, alleged that it is the owner of certain lands described in paragraph 1 of plaintiff's petition. As shown by the petition, the following are the facts alleged as ground for the injunction herein:

"On June 9, 1908, the West Davidson Lum-

ber Company was the owner of a certain sawmill and certain pine timber and timber lands situated near Lovelady. The capital stock of this company was owned principally by W. W. West and the defendant, Lynch Davidson. W. W. West decided to purchase Lynch Davidson's interest in this sawmill. To this end he organized a corporation known as the W. W. West Company, and on June 9, 1908, purchased from the West Davidson Lumber Company all of its assets for the sum of $107,000, evidenced by promissory notes, of that date, of the W. W. West Company, and gave as security therefor a deed of trust of the date above mentioned upon all of this property, and in addition thereto pledged with the West Davidson Lumber Company to secure these notes 992 shares of the capital stock of the W. W. West Company, which was all of the capital stock of the company, except eight shares. (Tr. p. 3, par. 2.)

"After the purchase of this property in the manner above described the W. W. West Company took charge of the sawmill and all the properties and undertook to operate it, but instead of making a profit the operations were carried on at a loss, and during these operations it incurred an indebtedness of $50,000 to the Orange Lumber Company, a corporation of which J. M. West was the principal stockholder, and W. W. West Company became unable to meet its obligations to its creditors in general, including the West Davidson Lumber Company and the Orange Lumber Company. (Tr. p. 4, par. 3).

"On March 11, 1910, J. M. West and the defendant, Lynch Davidson, entered into a contract in writing, by the terms of which it was agreed that J. M. West should take charge of all of the assets of W. W. West Company and operate the same to the best of his ability, with the end in view and to the purpose of paying first $57,000 of the indebtedness of W. W. West Company to the West Davidson Lumber Company, said indebtedness then being held by the Continental Lumber & Tie Company, second, to pay all of the other indebtedness of the W. W. West Company, except the balance due the Continental Lumber & Tie Company of approximately $57,000, and providing that the balance, if any there should be remaining, after the payment of the first $57,000 due Continental Lumber & Tie Company and all other indebtedness of W. W. West Company, should be divided equally one-half to each between J. M. West and defendant, Lynch Davidson, the contract having provided that J. M. West would bring about the cancellation of the $50,000 indebtedness held by the Orange Lumber Company, and that Lynch Davidson would bring about the cancellation of the balance of the indebtedness owed to the Continental Lumber & Tie Company by W. W. West Company of approximately $50,000 or $57,000. It is alleged that the gist of the entire agreement between the defendant and J. M. West was to the effect that J. M. West should take charge of the properties of the W. W. West Company and realize therefrom a sufficient amount first to pay $57,000 of the $107,000 indebtedness due the Continental Lumber & Tie Company, that being the same indebtedness previously held by the West Davidson Lumber Company, and realize therefrom, if possible, a sufficient amount to pay the balance of the debts of the W. W. West Company, except the balance of approximately $50,000 due the Continental Lumber & Tie Company and the $50,000 due the Orange Lumber Company, and the remainder of the assets, if any, to then belong to plaintiff and defendant in the proportion of half each. (Tr. pp. 4 and 5, par. 5.)

"In pursuance of this contract, J. M. West took over all of the properties of the W. W. West Company with the acquiescence of all of the stockholders and officers and directors of said company, and began the operation thereof, and gave his personal time and attention there-

to without making any charge for the services, and advanced large sums of money to said company so that it might continue its operations, and caused the Orange Lumber Company to advance large sums therefor, and in fact proceeded with the best of his ability to operate the properties and realize therefrom the best possible returns, and did operate them until he had cut substantially all of the timber owned by the W. W. West Company and sold it on the market to the best possible advantage and then made diligent efforts to secure other timber to continue the operations; but, because of the fact that none was available at a price at which it could be used at a profit, the operation of the mill was of necessity discontinued, and, in spite of his careful and economical management, the operation during the time it was operated was at a heavy loss, but nevertheless he paid the $57,000 due the Continental Lumber & Tie Company as it became due in accordance with the agreement mentioned above. That upon the payment of the $57,000, one-half of the stock of the W. W. West Company which was attached to the notes was delivered to him, so that after the $57,000 was paid the defendant, Lynch Davidson, held one-half of the stock of W. W. West Company, which was attached to the balance of the notes which he held aggregating $50,000 or $57,000, but which he agreed to cancel in the contract as mentioned above. (Tr. pp. 5 and 6, par. 6.)

"After the sawmill had been operated until substantially all of the timber had been cut that was available, it was necessary then to dispose of the assets, lands, etc., of the W. W. West Company to the best possible advantage. To this end, J. M. West sold the lands belonging to the company to J. D. Freeman on January 20, 1911, for the sum of $17,094.12, $1,000 of which was paid cash and immediately applied to the debts of W. W. West Company which existed at that date, and the balance of the purchase price of the land which was covered by notes was also applied to other indebtedness of the W. W. West Company which existed at that time. (Tr. p. 6, par. 7.) It not being feasible or practicable to continue operations, the corporation was dissolved.

"The Freeman notes were transferred to West Lumber Company, the appellant herein, in part satisfaction for advances made to pay off certain indebtedness of the W. W. West Company that existed on March 11, 1910. J. D. Freeman defaulted in the payment of these notes, and W. W. West Company, being unable to collect them, took a conveyance of the land from Freeman to C. B. Granbury, trustee, for appellant, West Lumber Company, in satisfaction of said notes. Even after the conveyance of the land to Granbury as trustee, the appellant, West Lumber Company, advanced and paid off for the account of W. W. West Company more than $17,000 of the indebtedness of said W. W. West Company. (Tr. p. 7, pars. 8 and 9.)

"It is further alleged: That, by virtue of the facts recited above, all of the notes which were not paid the West Davidson Lumber Company, and which aggregated approximately $50,000 or $57,000, have become fully canceled and discharged. Further, that all of the acts of J. M. West in the premises were well known to the defendant; that he was constantly kept advised of all of the operations, and that he acquiesced therein and ratified and approved the acts of J. M. West in the premises. And, further, that J. M. West in undertaking to carry out the terms of the contract of date March 11, 1910, expended and lost of his own money and that of his companies more than $100,000, all of which was known to the defendant and acquiesced in by him at the time, and that by reason of all of these facts the defendant is estopped now to assert any interest in the lands in question. (Tr. pp. 7 and 8, pars. 11 and 12.)

"It is further alleged as follows: That the

defendant is now taking steps to assert title and interest in said lands and premises as the owner and holder of an undivided interest therein resulting from the proposed ownership by him of 552 shares of the capital stock of said W. W. West Company, the same being the remaining half of said stock deposited as collateral of said obligations of W. W. West Company to said West Davidson Lumber Company, and which are attached to said $57,000 worth of said notes remaining in his possession, and to that end has given notice that on, to wit, the 11th day of June, 1917, at his office in the Carter building, he will proceed to sell said stock as the collateral holder thereof, or the defendant is undertaking through such sale to place the ownership of said stock in the hands of a purchaser in the expectation that such purchaser would not be at the disadvantage in owning same in which defendant finds himself, and could thereby assert title to said land, which the defendant is now estopped by virtue of the premises from asserting, and a further cloud is sought to be cast upon the title of plaintiff in said premises, by said action of defendant in conducting said sale and by the results of such sale and the consequences that will follow therefrom if same is permitted to be conducted and consummated. (Tr. p. 9, par. 15.)

"It is further alleged as follows: That defendant has no right, title, interest, or equity in said lands or premises of any sort or kind whatever, and his said assertions and claims of titles and equities are wrongful and malicious and done in total and wanton disregard of the rights of plaintiff and with the willful and malicious intent to thereby injure plaintiff. (Tr. p. 10, par. 17.)

"The prayer was, among other things, for an injunction to restrain defendant from selling or undertaking to sell said stock of the W. W. West Company. (Tr. p. 11.)"

No answer was filed in the court below by appellee, but appellee's attorneys were present and participated in the hearing of the application.

The contract between J. M. West and appellee referred to in petition was not attached to the petition, but was before the court on the hearing, and by agreement of parties is considered by this court a part of the petition.

We are of opinion that the trial court did not err in refusing to grant the temporary injunction. The contract between J. M. West and appellee expressly provides that, after the payment by West of the indebtedness of the company to the extent mentioned in the plaintiff's petition above set out, he would acquire and transfer and deliver to appellee one-half of the capital stock of the company, and when said stock was so transferred to appellee he would surrender and cancel the balance of the unpaid notes of the company held by him and the Continental Lumber & Tie Company, and release the lien given to secure the payment thereof upon the lands now claimed by appellant.

It appears from the allegation of the petition that J. M. West has not transferred and delivered any of the stock to appellee, and appellee only holds the same as collateral security for the notes. If the allegations of the petition are true, and being undenied they are presumed to be true, all of the property

and assets of every kind owned by the W. W. West Company have been disposed of, and the proceeds thereof applied in accordance with the provisions of the contract in the payment of the debts of the corporation, and the corporation has been dissolved.

If these facts are true, the acquisition of one-half of the stock by J. M. West and its transfer and delivery to appellee would have been a vain and useless performance, and the failure of appellant to comply with that provision of the contract would not affect his right to have the property held by him by purchase from the W. W. West Company free of any lien for the payment of the balance due appellant and the Continental Lumber & Tie Company. This right of appellant cannot be impaired or endangered by the sale of the stock held by appellee as collateral. We do not think that a purchaser of the stock would be in any better position to set up irregularities in the disposition of the property and have the sale thereof set aside because of such irregularities than is appellee. In volume 10, p. 589, Cyc., it is said:

"Certificates of shares of capital stock are not negotiable instruments either in form or character. * * * The general consequence of this doctrine is that whoever takes them takes them subject to the equities and burdens which attend them as in the case of the purchase of any other nonnegotiable paper, and that, although ignorant of such equities and burdens, his ignorance does not relieve the paper thereof, or enable him to hold it discharged therefrom. They are nonnegotiable in the sense that a complete transfer of title, good not only between the parties but also against the corporation itself, can only be made with the concurrence of the act of the corporation in pursuance of its charter, governing statute, or operative by-laws."

In the case of Young v. South Tredegar Iron Co., reported in 85 Tenn. 189, 2 S. W. 202, 4 Am. St. Rep. 752, the Supreme Court of Tennessee says:

"It is well settled that such certificates (meaning certificates of capital stock) are not negotiable. The assignee takes them subject to all the equities which existed against the assignor. They are choses in action. Cornick v. Richards, 3 Lea, 1."

It seems to us, upon the facts shown by the record, that, while the granting of the injunction would not have injured appellee, its refusal cannot injure appellant. In this view of the case, the judgment of the trial court should be affirmed, and it has been so ordered.

Affirmed.