FILED

03/21/2017

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 14, 2016 Session

## CLAYTON EDDY POWERS v. A&W SUPPLY, INC.

Interlocutory Appeal from the Chancery Court for Knox County
No. 189651-2        Clarence E. Pridemore, Jr., Chancellor

_____

No. E2016-01489-COA-R9-CV
_____

This appeal arose from a contract dispute between the plaintiff employee and the defendant corporation regarding shares of corporate stock. The parties signed an agreement in June 1993, which provided that the plaintiff would become vested with the right to receive two and one-half percent of the total number of issued and outstanding shares of the corporation's capital stock so long as the plaintiff remained an employee in good standing with the corporation from the date of said agreement until the vesting date of December 31, 2001. It is undisputed that the plaintiff remained an employee in good standing with the corporation on the vesting date. Following the vesting date, the corporation never delivered stock certificates to the plaintiff or recognized the plaintiff as a shareholder within the company. The corporation terminated the plaintiff's employment in October 2014, and in November 2014, the plaintiff made his first inquiry about his ownership interest in the stock to which he was entitled under the agreement. The defendant company denied that the plaintiff owned any stock in the company. The plaintiff thereafter filed an action against the corporation, seeking specific performance, declaratory judgment, and damages resulting from breach of contract. The plaintiff filed a motion for partial summary judgment, requesting a determination that the plaintiff was automatically vested in two and one-half percent of the total number of shares of the corporation's capital stock. The defendant also filed a motion for summary judgment, averring that because the corporation never took action to transfer the shares of capital stock to the plaintiff on the vesting date, the plaintiff's cause of action accrued in 2001, rendering the plaintiff's present action time barred by the applicable statute of limitations. The trial court determined that the plaintiff was vested with ownership of the shares on the vesting date and that the plaintiff's action was not barred by the statute of limitations. Discerning no error, we affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

David L. Johnson, Nashville, Tennessee, for the appellant, A&W Supply, Inc.

Kevin A. Dean, Knoxville, Tennessee, for the appellee, Clayton Eddy Powers.

**OPINION**

Clayton Eddy Powers began working as a sales representative for A&W Supply, Inc. ("A&W") in May 1988. Mr. Powers remained employed by A&W for over twenty-six years until his employment was terminated by A&W in October 2014. On June 24, 1993, Mr. Powers and A&W entered into a written agreement ("the Agreement"), which entitled Mr. Powers to become vested with the right to receive two and one-half percent of the total number of issued and outstanding shares in A&W's capital stock ("the Employee Shares") upon his continued employment in good standing with the corporation through the vesting date of December 31, 2001. The Agreement, signed by Mr. Powers and representatives of A&W, contained the following provisions in relevant part:

> 1. <u>Ownership Interest in Shares</u>. Provided that the Employee shall be an employee in good standing of the Company at all times from the date hereof through and including December 31, 2001 (the "Earnout Period"), the Employee shall on December 31, 2001 (the "Vesting Date") become vested with the right to receive from the Company that number of shares of the capital stock of the Company which is equal to two and one-half percent (2.5%) of the total number of issued and outstanding shares of the Company's capital stock on the Vesting Date (the "Employee Shares"). The Employee Shares shall be transferred to the Employee by the Company, and shall constitute additional compensation to the Employee from the Company.

> 2. <u>Effect of Termination of Employment Prior to Vesting</u>. Upon the termination of the Employee's employment with the Company at any time for any reason prior to such time as the Employee shall have become vested with the Employee Shares, all rights of the Employee to become vested with respect to or receive all or any part of the Employee Shares shall cease and terminate as of the effective date of termination of the Employee's employment. The Employee shall not be vested with or have any ownership interest in the Employee Shares by reason of employment with the Company for less than the entire Earnout Period, it being expressly understood and agreed that the Employee must be an employee of the

- 2 -

Company in good standing at all times during the Earnout Period in order to be vested with respect to the Employee Shares.

3. <u>Delivery of Certificate to Employee</u>. Subject to the conditions and limitations set forth in this Agreement, at such time as the Employee has become vested with the Employee Shares, the Company shall execute and deliver, or cause to be executed and delivered, to the Employee, within thirty (30) days from and after the Vesting Date, a certificate or certificates representing the Employee Shares whereby the Company shall transfer the Employee Shares to the Employee, but subject to the terms, provisions, restrictions and limitations set forth in this Agreement, and such certificate or certificates shall bear an appropriate legend on the face thereof evidencing this fact.

4. <u>Covenants and Agreements of Employee Relative to Employee Shares</u>. At such time as the Employee shall become vested with the Employee Shares as provided in this Agreement, the Employee agrees that the Employee and the Employee Shares shall be subject to the following:

\* \* \*

(e) The Employee shall have the right from and after the Vesting Date to receive the Employee's pro rata share of all distributions from the Company with respect to its capital stock, which shall be paid and/or delivered to the Employee upon the same terms and conditions as the other shareholders of the Company. The Employee acknowledges and agrees, however, that the Employee shall not, solely by virtue of ownership of the Employee Shares, be entitled to receive, nor have the right to require the Company to make, any distributions or payments of any kind to the Employee with respect to its Employee Shares, and that all such distributions and/or payments by the Company with respect to its capital stock, including the Employee Shares, shall be made solely upon the determination of the board of directors and/or all shareholders of the Company acting pursuant to the charter and bylaws of the Company and applicable law[.]

\* \* \*

7. <u>Additional Cash Compensation</u>. The Employee acknowledges that the Employee shall have no vested or other interest in the Employee Shares until such time as the Employee Shares shall have vested pursuant to the terms of this Agreement.

- 3 -

* * *

8. <u>Severance Payment</u>. The Company and the Employee agree that upon the termination of the Employee's employment with the Company prior to such time as the Employee has become vested with the Employee Shares as provided for in this Agreement, for any reason, the Employee shall be entitled to the severance payment described in this <u>paragraph 8</u> (the "Severance Payment"), the acceptance of which by the Employee shall operate as a waiver of all other or remaining claims by the Employee against the Company . . . .

* * *

In the event that the Employee's employment with the Company shall terminate on or after the Vesting Date, the Employee shall have no right to the Severance Payment described in this <u>paragraph 8</u>, which right shall immediately and forever expire upon the vesting of the Employee Shares on the Vesting Date.

(Emphasis in original.)

During Mr. Powers's employment, A&W attempted to purchase his interest in A&W's stock on two separate occasions. The first offer was made in March 1999 at the price of $27,940.00 in exchange for Mr. Powers's "70% vested interest." Subsequently, A&W offered Mr. Powers $40,165.72 in 2001 for his interest in the shares of A&W's capital stock. The parties failed to come to an agreement, however, and A&W never purchased Mr. Power's interest in the A&W capital stock.

It is undisputed that Mr. Powers remained an employee in good standing at all times from the date of the Agreement through December 31, 2001, the vesting date specified in the contract. A&W also does not dispute that Mr. Powers became vested with the right to receive the stock on December 31, 2001. The parties agree that A&W never issued or delivered "stock certificates" to Mr. Powers or recognized Mr. Powers as a shareholder in the corporation. According to A&W, the corporation representatives do "not recall the circumstances in which [Mr.] Powers was not issued stock certificates." In his response to A&W's statement of undisputed facts, Mr. Powers acknowledged that he had knowledge in February 2002 that A&W had not provided him with any stock certificates. Mr. Powers also does not dispute that he never sought to exercise his rights as a shareholder during his employment.

Following Mr. Powers's termination in October 2014, Mr. Powers first mentioned his ownership interest of A&W's stock to Michael Taylor, the Chief Executive Officer

for A&W. Mr. Taylor executed an affidavit, describing his meetings with Mr. Powers and his investigation into Mr. Powers's purported stock ownership. Mr. Taylor determined:

> A&W could not locate any signed agreement . . . relating to agreeing to pay Mr. Powers in lieu of him becoming a shareholder, that A&W had no record of paying Mr. Powers any amount of money in lieu of him becoming a shareholder, and that A&W had no records that Mr. Powers had ever been issued any shares or been considered as a shareholder.

Also according to his affidavit, Mr. Taylor eventually met with Mr. Powers and informed him that "A&W had never made him a shareholder and that the statute of limitations had expired for any claim for failure to do so." An employment separation agreement signed by Mr. Powers and Mr. Taylor stated that "[Mr.] Powers claims to be the owner of 250 shares of A&W stock, which A&W denies[.]"

On May 20, 2015, Mr. Powers filed a complaint, requesting a declaratory judgment, specific performance, and, alternatively, damages for breach of contract regarding the Agreement. Mr. Powers participated in depositions during the pendency of the case. On April 29, 2016, A&W filed a motion for summary judgment, asserting that there was no genuine issue of material fact and requesting that the trial court find that Mr. Powers's claim was barred by the applicable statute of limitations. *See* Tenn. Code Ann. § 28-3-109(a)(3). A&W principally argued that Mr. Powers was only vested with a right to receive the shares on December 2001 and that he would not have become the owner of the Employee Shares until the delivery of the stock certificates. A&W therefore contended that the statute of limitations began to run on January 30, 2002, thirty days after the contractual vesting date within which the stock certificates should have been delivered. As such, A&W claimed that Mr. Powers's action was barred by the six-year statute of limitations for contract actions.

Also on April 29, 2016, Mr. Powers filed a motion for partial summary judgment, alleging that no genuine issue of material fact existed and requesting that the trial court declare Mr. Powers an owner of the Employee Shares as of December 31, 2001. In his motion, Mr. Powers requested that the trial court find that he had been automatically vested with ownership of the Employee Shares on December 31, 2001, after he completely performed his obligations under the contract, despite A&W's failure to deliver the stock certificates to him. According to Mr. Powers, the Agreement signed by the parties automatically vested him with ownership of the Employee Shares on the vesting date because "there is no affirmative obligation on behalf of [Mr. Powers] to take any action to trigger the vesting[.]" Consequently, Mr. Powers claimed that the statute of limitations did not bar his action for relief.

On July 11, 2016, the trial court granted partial summary judgment in favor of Mr. Powers, "specifically declaring that [Mr. Powers] is a vested owner of 2.5% of the total number of issued and outstanding shares of [A&W's] capital stock as of December 31, 2001, with [A&W] required to take the action(s) necessary to recognize this vested ownership interest." In turn, the trial court denied A&W's motion for summary judgment. Upon oral motion of counsel for A&W, the trial court granted permission to seek an interlocutory appeal, determining that A&W's "statute of limitations argument presents a novel issue of Tennessee law." On July 25, 2016, A&W sought permission from this Court for an interlocutory appeal, which was granted on August 12, 2016.

## II. Issue Presented

Pursuant to Tennessee Rule of Appellate Procedure 9, "we are limited on appeal to the questions certified by the trial court in its order granting permission to seek an interlocutory appeal and in this Court's order granting the appeal." *In re Bridgestone/Firestone & Ford Motor Co. Litig.,* 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008). This Court granted an interlocutory appeal in the instant action to address the following issue:

> Whether the action below was barred by the running of the statute of limitations set forth in Tennessee Code Annotated section 28-3-109(a)(3).

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC,* 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support

its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Statute of Limitations

A&W contends that Mr. Powers's cause of action began to accrue in January 2001 and is therefore untimely due to operation of the six-year statute of limitations for contract actions. *See* Tenn. Code Ann. § 28-3-109(a)(3) (2000). In response, Mr. Powers argues that he was vested in ownership of the Employee Shares in December 2001 and that the statute of limitations does not preclude his action.

In determining that Mr. Powers currently owns the Employee Shares, the trial court stated as follows:

Upon hearing the arguments of counsel, and upon consideration of the record as a whole, the Court finds that, based on the competing motions, statements of undisputed material facts filed by each party (including exhibits), and the replies filed to each of the competing motions, that there are no genuine issues as to any material fact and [Mr. Powers] is entitled to judgment as a matter of law; pursuant to Tenn. R. Civ. P. 56.04, the Court hereby grants [Mr. Powers's] motion for partial summary judgment and denies [A&W's] motion for summary judgment on the following grounds:

(1) Based on the record as a whole, specifically the Statements of Undisputed Material Facts filed by each party and the statements of counsel for both [Mr. Powers] and [A&W] in open court, [Mr. Powers] and [A&W] are in agreement that there are no genuine issues as to any material fact with respect to the question of whether [Mr. Powers] owns any interest in the capital stock of [A&W];

(2) [Mr. Powers] fully performed under the Agreement . . . and acquired a vested ownership interest in 2.5% of the total number of issued and outstanding shares of [A&W's] capital stock as of December 31, 2001;

(3) Under Tennessee law, reflected in Comment 2 to Tenn. Code Ann. §47-8-302, Article 8 (of Tennessee's version of the Uniform Commercial Code) does not determine whether a property interest in a certificated or uncertificated security is acquired under other law, such as the law of gifts, trusts, or equitable remedies; and

(4) The Court has considered and weighed the equitable remedies pled by each party and finds that an appropriate equitable remedy is recognition of [Mr. Powers's] vested ownership interest in 2.5% of the total number of issued and outstanding shares of [A&W's] capital stock as of December 31, 2001.

It is therefore ORDERED that [Mr. Powers's] motion for partial summary judgment is GRANTED, the Court specifically declaring that [Mr. Powers] is a vested owner of 2.5% of the total number of issued and outstanding shares of [A&W's] capital stock as of December 31, 2001, with [A&W] required to take the action(s) necessary to recognize this vested ownership interest. It is further ORDERED that [A&W's] motion for

summary judgment is DENIED given that [Mr. Powers] was vested with ownership interest in the capital stock of [A&W] as of December 31, 2001.

Having carefully reviewed the record in this cause, we agree with the trial court's conclusion that the applicable statute of limitations does not preclude Mr. Powers's action. In order to fully address the issue regarding the statute of limitations, it is necessary to first address whether Mr. Powers became vested with ownership of the Employee Shares on December 31, 2001, under the parties' agreement.

The Agreement, executed on June 24, 1993, provided that if Mr. Powers remained an employee of A&W in good standing at all times "through and including" December 31, 2001, Mr. Powers would "become vested with the right to receive from [A&W]" the Employee Shares on December 31, 2001. The Agreement identified December 31, 2001, as the "'Vesting Date.'" A&W does not dispute that Mr. Powers remained an employee of A&W in good standing on December 31, 2001. A&W also does not dispute that Mr. Powers therefore had the right to receive the Employee Shares on December 31, 2001.

Pursuant to the Agreement:

[A]t such time as [Mr. Powers] has become vested with the Employee Shares, [A&W] shall execute and deliver, or cause to be executed and delivered, to [Mr. Powers] within thirty (30) days from and after the Vesting Date, a certificate or certificates representing the Employee Shares whereby [A&W] shall transfer the Employee Shares to the Employee . . . .

Neither party disputes that (1) stock certificates were never issued or presented to Mr. Powers, (2) Mr. Powers had knowledge that he had not received stock certificates regarding the Employee Shares in February 2002, (3) Mr. Powers never sought to exercise any rights as a shareholder of A&W during his employment, and (4) A&W did not recognize Mr. Powers as a shareholder in the company. The parties agree that Mr. Powers first inquired about his ownership interest in A&W capital stock in November 2014 after his termination from A&W in October 2014. It was thereafter when an A&W representative, Mr. Taylor, informed Mr. Powers that A&W never made him a shareholder in the company and "that the statute of limitations had expired for any claim of failure to do so." Through an employment separation agreement executed by Mr. Powers and Mr. Taylor on November 21, 2014, A&W acknowledged that Mr. Powers claimed ownership to the shares while specifically denying that Mr. Powers was an owner of any shares of A&W stock.

This Court has previously applied equitable principles in circumstances involving enforcement of a shareholder's agreement. *See Pelot v. Cakmes*, E1999-02550-COA-R3-CV, 2000 WL 116046, at *6 (Tenn. Ct. App. Jan., 31, 2000). Under the specific circumstances of this case, we find the following equitable principle applicable:

"Tennessee courts have long recognized that '[e]quity regards that as done which in good conscience ought to be done.'" *Holt v. Holt*, 995 S.W.2d 68, 71 (Tenn. 1999) (citing *McCann Steel Co. v. Third Nat'l Bank*, 337 S.W.2d 886, 891 (Tenn. Ct. App. 1960); William H. Inman, *Gibson's Suits in Chancery* § 21 (7th ed. 1988); 11 Tenn. Jur. *Equity* § 11 (1995); 2 Pomeroy *Equity Jurisprudence* § 364 (5th ed. 1941)). The most recent edition of *Gibson's Suits in Chancery* § 2.12 (formerly § 21 in previous editions) states in relevant part:

> **Equity Regards That as Done Which Ought to Be Done.** – In a Court of Chancery *ought to be becomes is*; and whatever a party ought to do or ought to have done, in reference to the property of another, will ordinarily be regarded as done. The rights of the parties will be adjudicated as though, in fact, it *had been done*.
>
> * * *
>
> This maxim is nearly allied to another maxim: *No one can take advantage of his own wrong*. To prevent a party from deriving advantage from his own wrong, Equity regards that as done which, in good reason and good conscience, ought to have been done. Agreements based on a valuable consideration are, in Equity, considered, in the interests of the person entitled to their performance, as performed, and performed at the time when, and in the manner in which, they ought to have been performed. The same consequences attach to the agreement as though it had actually been performed, so that the party in default shall not benefit by his wrong, nor the other party suffer thereby.
>
> In reference to agreements the maxim is sometimes stated as thus: *What is agreed to be done is considered as done*, and sometimes thus, *Equity treats that as done which is agreed to be done upon sufficient considerations*. It must be borne in mind that the maxim seeks no more than to enforce an equitable obligation. There must be a right on one side and a corresponding duty on the other side. Equity does not regard as done what *might* have been done, or what *could* have been done, but what *ought*, in good reason and good conscience, to have been done. Nor does this rule operate in favor of anyone except him who has the equitable right to have the act performed, and those standing in his shoes; nor does it operate against anyone except him upon whom the duty has devolved, and upon those who stand in his place.

Henry R. Gibson, *Gibson's Suits in Chancery* § 2.12 (8th ed. 2004) (emphasis in original).[1]

Ownership of shares of corporate stock is not required to be represented by stock certificates. *See* Tenn. Code Ann. § 48-16-206 (2012). Furthermore, unless expressly provided otherwise, a shareholder's rights and obligations are identical with or without representation by a stock certificate. *Id.*; *see Leimas v. Davies*, No. 01A01-9303-CH-00127, 1993 WL 404147, at *5 (Tenn. Ct. App. Oct. 8, 1993) (citing *Cartwright v. Dickinson*, 12 S.W. 1030 (Tenn. 1890)). Stock certificates are "mere evidence of ownership of shares of corporate stock." *Leimas*, 1993 WL 404147, at *5 (citing *Young v. South Tredegar Iron Co.*, 2 S.W. 202 (Tenn. 1886)). Moreover, our Supreme Court has held: "A sale or transfer of stock, to be valid, need not be in writing. The certificate need not, in fact, be delivered. A transfer is perfectly good, although the seller of the stock never had a certificate at all, and although no certificate is issued to the transferee." *Parker v. Bethel Hotel Co.*, 34 S.W. 209, 216 (Tenn. 1896).

On December 31, 2001, Mr. Powers fully performed his obligations under the Agreement. A&W, however, never issued to Mr. Powers stock certificates evincing his ownership of the Employee Shares. A&W now seeks to rely on its failure to issue such certificates to Mr. Powers as a defense to preclude Mr. Powers's claim. A&W essentially argues that although it breached the Agreement, Mr. Powers cannot recover for such breach due to expiration of the six-year statute of limitations for contract actions. *See* Tenn. Code Ann. § 28-3-109(a)(3). However, inasmuch as a transfer of stock does not require issuance or delivery of a stock certificate to be valid, s*ee Parker*, 34 S.W. at 216, we apply the above principle of equity to determine that the issuance and delivery of stock certificates to Mr. Powers is considered as having been done pursuant to the Agreement between the parties. By reason of the foregoing, we determine that Mr. Powers was vested with ownership of the Employee Shares on December 31, 2001.

Having so concluded, we must address whether Mr. Powers's instant action is time barred pursuant to the six-year statute of limitations provided in Tennessee Code Annotated § 28-3-109(a)(3). Mr. Powers, in person, first directed an inquiry regarding his ownership of A&W stock to Mr. Taylor on November 14, 2014. Following that meeting, Mr. Taylor investigated the claim and could find no evidence that an agreement had been reached for Mr. Powers to receive a sum of money in lieu of becoming a shareholder in the company. Likewise, he found no proof that A&W had paid Mr. Powers any sum of money for such purpose. Furthermore, Mr. Taylor discovered no records documenting that A&W had transferred the Employee Shares to Mr. Powers as

---

[1] The text in the eighth edition of *Gibson's Suits in Chancery* § 2.12 appears to be identical to section 21 in the seventh edition of *Gibson's Suits in Chancery*. *See* Henry R. Gibson, *Gibson's Suits in Chancery* § 2.12 (8th ed. 2004); William H. Inman, *Gibson's Suits in Chancery* § 21 (7th ed. 1988).

required by the Agreement. Mr. Taylor again met with Mr. Powers on November 21, 2014, informing the latter that "A&W had never made him a shareholder and that the statute of limitations had expired for any claim of failure to do so." In an employment separation agreement signed by Mr. Powers and Mr. Taylor, A&W denied Mr. Powers's ownership in A&W's stock.

During the November 21, 2014 meeting, A&W representatives made clear to Mr. Powers that A&W did not intend to recognize Mr. Powers's stock interest acquired pursuant to the Agreement. Consequently, Mr. Powers's cause of action accrued on November 21, 2014, when A&W refused to recognize Mr. Powers's ownership of the Employee Shares. Because Mr. Powers subsequently filed the present action on May 2, 2015, we determine that his action was timely filed inasmuch as the statute of limitations did not bar his claims.

## V. Doctrine of Laches

A&W also seeks to rely on the doctrine of laches as a bar to Mr. Power's claim. As this Court has previously explained: "For interlocutory appeals, the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000). This Court did not certify an issue regarding the applicability of the doctrine of laches for review in this interlocutory appeal. Therefore, the question of whether the doctrine of laches precludes Mr. Powers's action is beyond the scope of the instant appeal.

## VI. Conclusion

For the reasons stated above, we affirm the judgment of the trial court. This case is remanded to the trial court for further proceedings consistent with this opinion and collection of costs below. Costs on appeal are taxed to the appellant, A&W Supply, Inc.

_____
THOMAS R. FRIERSON, II, JUDGE